ELLINGER, Respondent, vs. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Appellant.

*March 19—June 20, 1907.*

*Life insurance: Apportionment of surplus: Discovery and production of books and papers to aid in framing complaint.*

By the terms of a policy of insurance issued by defendant to plaintiff on the semi-tontine plan, all surplus or profits derived from similar policies which should not be in force at the completion of their respective tontine periods were to be apportioned equitably among the policies which should complete such periods, and at the completion of the tontine period plaintiff was entitled to choose between several methods of settlement, under one of which he had the right to withdraw in cash the policy's entire share of accumulated reserve (the amount thereof being specified) "and in addition thereto the surplus apportioned by" the defendant to the policy. Information as to the amounts to which he would be entitled under the several methods of settlement given was obtainable only from defendant. *Held*, that plaintiff was not bound to accept defendant's statements as to such amounts, and that to enable him to frame his complaint in an action on the policy it was within the discretion of the circuit court, under sec. 1, Circuit Court Rule XIX (New Rule XVIII), to order defendant to give plaintiff an inspection and copy, or permission and opportunity to take a copy, of all books, data, and memoranda showing the reserve fund and accumulated surplus and other funds in any way affecting and pertaining to the policy and showing what portion thereof should properly be applied on the policy.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

It appears from the record and is undisputed that March 11, 1884, the defendant issued to the plaintiff its twenty-year "semi-tontine" policy No. 274,493, upon which the plaintiff was to pay, and did pay, to the defendant the annual premium of $410.85, making in the aggregate for the said twenty years the sum of $8,217. At the expiration of the twenty years covered by the policy, March 10, 1904, the plaintiff claimed as the total cash value of said policy of insurance a sum in excess of $13,000, which the defendant refused to pay, and claimed that there was only due to the plaintiff thereon the sum of $9,122.70. July 29, 1904, the plaintiff commenced this action by the service of a summons only, on an affidavit showing the facts stated and alleging that under such contract of insurance the plaintiff was entitled to said policy's share of the reserve fund and the accumulated surplus funds and other funds therein mentioned. The trial court on September 20, 1904, made an order on the defendant, under sec. 4183, Stats. (1898), and Circuit Court Rule No. XIX, to show cause why the defendant should not allow the plaintiff to have "inspection or sworn copies of all books, data, and memoranda showing the reserve fund and accumulated surplus and other funds of said defendant, within the period covered by the policy, . . . and showing what portion of said reserve fund and such accumulated surplus and any other funds in the hands of the defendant are proper to be applied upon said policy of insurance."

The hearing of that order to show cause was extended to October 29, 1904. Before such hearing and on October 21, 1904, and upon application of the defendant, the plaintiff was required to be examined October 26, 1904, before a circuit court commissioner therein named "otherwise than as a witness on the trial," under sec. 4096, Stats. (1898). Thereupon and after full hearing the trial court "ordered that all proceedings before the said John T. Wentworth, court commissioner, until after the hearing and the determination of

the order to show cause made and entered herein on the 20th of September, 1904, be and the same are hereby stayed, and that the plaintff have costs on this motion in the sum of $10." *Ellinger v. Equitable L. Assur. Soc.* 125 Wis. 643, 645, 104 N. W. 811. Upon an appeal from that order the same was reversed, and the cause was remanded for further proceedings according to the opinion. 125 Wis. 649 (104 N. W. 813).

Upon the *remittitur* being filed the examination of the plaintiff under sec. 4096, Stats. (1898), was had at great length. Thereupon and on October 25, 1906, and upon such examination of the plaintiff and affidavits on the part of the defendant, and all the records, affidavits, and other papers read or used by either party in the cause, the trial court ordered that the defendant be and it was thereby ordered and required to give to the plaintiff an inspection and copy, or permission and opportunity to take a copy, of all books, data, and memoranda showing the reserve fund and accumulated surplus and other funds of the defendant within the period covered by said policy and in any way affecting and pertaining to said policy, and showing what portion of said reserve fund and such accumulated surplus or any other funds in the hands of the defendant are proper to be applied upon said policy of insurance; said inspection and said opportunity to take a copy to be made and had by the defendant depositing said books, data, and memoranda with the clerk of this court in his office on or before 2 o'clock p. m. of November 25, 1906, and such deposit to continue until 2 o'clock p. m. of January 25, 1907, unless sooner notified by the plaintiff of the completion of such inspection and examination; or at the option of the defendant and upon written notice to the plaintiff or his attorney to be given within ten days from the date hereof to that effect, or within ten days after any stay of proceedings which may be granted herein shall have expired, the said inspection and copy or permission and opportunity to take a copy of said books, data, and memoranda may be

had and given at the general office of the defendant in the
city of New York, said inspection to commence within thirty
days after the service upon the plaintiff or his attorneys of
said notice, and to continue for and during a period of sixty
days after the commencement of such inspection and exam-
ination, unless the defendant shall be sooner notified by the
plaintiff of the completion of such inspection and examina-
tion. It was therein further ordered that the time within
which the plaintiff might make, serve, and file his complaint
in said action be extended to and including twenty days from
and after the completion of the inspection and examination
of books, data, and memoranda of the defendant, and the
notification to that effect to be given by plaintiff to the de-
fendant as hereinbefore provided, subject, however, to the
further order of the court upon the application of the de-
fendant. It was therein further ordered that the defendant
be required to pay to the plaintiff's attorneys the sum of $10
costs of motion within ten days after service of a copy of this
order. From such order the defendant appeals.

For the appellant there was a brief by *Winkler, Flanders,
Bottum & Fawsett,* and oral argument by *C. F. Fawsett.*
They cited, among other cases, *Noonan v. Orton,* 28 Wis.
600; *Kraus v. Sentinel Co.* 62 Wis. 660, 663; 2 Wait, Pr.
526, 529, 530, 532; 6 Ency. Pl. & Pr. 788, 792, 795, 796,
805, 806; *Phillips v. Curtis,* 70 App. Div. 551; *Walsh v.
Press Co.* 48 App. Div. 333, 335; *Goodyear's I. R. G. Mfg.
Co. v. Gorham,* 83 Hun, 342; *Brownell v. Nat. Bank,* 20
Hun, 517; *Ex parte Clarke,* 126 Cal. 235, 46 L. R. A. 645;
*Equitable L. Assur. Soc. v. Clark,* 80 Miss. 471, 31 South.
964; *Caspary v. Carter,* 84 Fed. 416; *Ryder v. Bateman,* 93
Fed. 31; *Bischoffsheim v. Brown,* 29 Fed. 341; *Phelps v.
Atl. & Pac. Tel. Co.* 46 Wis. 266, 268; Story, Eq. Pl.
§§ 319–325; *Green v. Carey,* 81 Hun, 496.

For the respondent there was a brief by *Kronshage, Mc-
Govern & Fritz,* attorneys, and *Arthur F. Belitz,* of counsel,

and the cause was argued orally by *Oscar Fritz*. They argued, among other things, that where the interest or equity of the obligee is, by virtue of the contract, dependent upon facts evidenced by records in the exclusive control of the obligor, inspection will be granted upon a showing sufficient to raise a reasonable presumption that the evidence contained in such records will aid in framing his pleading with definiteness and certainty: indispensable necessity need not be shown. *Fuller v. Knapp,* 24 Fed. 100; *Pierce v. Equitable L. Assur. Soc.* 145 Mass. 56; *U. S. L. Ins. Co. v. Spinks* (Ky.) 96 S. W. 889; *Chicago Mut. L. Ind. Asso. v. Hunt,* 127 Ill. 257; *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 1037; *Churchill v. Loesser,* 89 Hun, 613; *Veiller v. Oppenheim,* 75 Hun, 21; *Eddy v. Bay Circuit Judge,* 114 Mich. 668, 72 N. W. 890; *Church v. Anti-Kalsomine Co.* 118 Mich. 219, 76 N. W. 383; *Anti-Kalsomine Co. v. Kent Circuit Judge,* 120 Mich. 250, 79 N. W. 186; *Williams M. & R. Co. v. Raynor,* 38 Wis. 132; *Nichols v. McGeoch,* 78 Wis. 360; *State v. Baetz,* 86 Wis. 29.

The following opinion was filed April 9, 1907:

CASSODAY, C. J. The statute declares:

"The court before which an action is pending, or a judge thereof, may, in discretion and upon due notice, order either party to give to the other, within a specified time, an inspection and copy or permission to take a copy of any books, papers and documents in his possession or under his control containing evidence relating to the merits of the action or of the defense therein." Sec. 4183, Stats. (1898).

One of the circuit court rules provides that such application may be made "by either party to compel the other to give him inspection and a copy, or permission to take a copy, of any books, papers or documents in his possession or under his control which may be necessary to enable the applicant to frame his complaint, answer or reply, as the case may be, or

which shall be material to any application made by him for any provisional remedy." Subd. 1, sec. 1, Circuit Court Rule XIX (New Rule XVIII). Another subdivision of the same rule authorizes such inspection as "may be necessary to enable the party applying therefor to prepare for trial."

This court has repeatedly held, in effect, that this rule, though adopted prior to the section of the statute quoted, was not superseded by that statute, but that the two continued in force, and to a certain extent supplemented each other. *Noonan v. Orton,* 28 Wis. 600; *Kraus v. Sentinel Co.* 62 Wis. 660, 23 N. W. 12; *Schuetze v. Continental L. Ins. Co.* 69 Wis. 252, 254, 255, 34 N. W. 90; *Ellinger v. Equitable L. Assur. Soc.* 125 Wis. 643, 647, 104 N. W. 811. Upon proper application the rule authorizes such inspection whenever it "may be necessary to enable the applicant to frame his" pleading or "to prepare for trial." Upon such application the statute authorizes such inspection whenever the books, papers, or documents sought to be inspected "contain evidence relating to the merits of the action or of the defense therein." Of course, such "evidence relating to the merits of the action" would be helpful in preparing for trial, and might be all that would be necessary to enable the applicant to frame his pleading.

Another section of the same rule requires that "the petition or affidavit to obtain such inspection . . . must state" that such books, papers, or documents "are not in the possession or under the control of the applicant, and that he is advised by his counsel and verily believes that such inspection and copy of such books, papers or documents as are therein mentioned is necessary to enable him to frame his complaint, answer or reply, or to obtain some provisional remedy, *or to prepare for trial,* as the case may be, and shall state the facts and circumstances relied on to obtain the order for such inspection and copy or permission to take a copy of such books, papers or documents." Sec. 2, Circuit Court Rule XIX.

The affidavit of the plaintiff's attorney in making such application for inspection in this case, so far as acting upon the advice of counsel is concerned, seems to have been a substantial compliance with the portion of the rule last quoted. The manifest purpose of the rule and statute, when taken together, was to secure to the party making proper application such right of inspection whenever "necessary to enable him to frame his" pleading or "to prepare for trial," or when the document sought to be inspected contains "evidence relating to the merits of" the controversy. Such is the general scope of inquiry prescribed by the statute and the rules of court.

The important question in the case at bar is whether the order granting such inspection, and from which this appeal is taken, is justified by the facts in the record upon which it is based. The facts set forth in the foregoing statement need not be here repeated. The purpose of the application appears to have been to ascertain by such inspection the amount of the reserve fund and surplus funds and other funds properly belonging to the plaintiff's policy during the twenty years it was in force. In addition to the defendant's agreement to pay $15,000 on satisfactory proof of the plaintiff's death, the contract of insurance provides that the "tontine dividend period" for the policy should be completed March 10, 1904, and also contained the following provisions:

"(3) That no dividend shall be allowed or paid upon this policy unless the person whose life is hereby assured shall survive the completion of its tontine dividend period as aforesaid, and unless this policy shall be then in force.

"(4) That all surplus or profits derived from such policies on the semi-tontine plan, as shall not be in force at the date of the completion of their respective tontine dividend periods, shall be apportioned equitably among such policies as shall complete their tontine dividend periods.

"(5) That upon the completion of the tontine dividend period on March 10, 1904, provided this policy shall not have been terminated previously by lapse or death, said *Al-*

*bert Ellinger* shall have the option either: *First,* to withdraw in cash this policy's entire share of the assets; *i. e.* the accumulated reserve, which shall be $5,645.25, and in addition thereto the surplus apportioned by this society to this policy; *secondly,* to convert the same into a paid-up policy for an equivalent amount, provided always that if the amount of said paid-up policy shall exceed the original amount of the assurance, a satisfactory certificate of good health from one of the society's medical examiners shall be required; *thirdly,* to continue the assurance for the original amount, and apply the entire tontine dividend to the purchase of an annuity, the amount derived from such annuity, together with the annual dividend on this policy, shall be paid in cash to said *Albert Ellinger* or assigns; *or fourthly,* to withdraw in cash the share of the accumulated surplus apportioned by said society to this policy, and continue the policy in force on the ordinary plan."

There is no question but that the plaintiff survived the completion of the tontine dividend period mentioned in the policy—March 10, 1904—nor that the policy was then still in force. Such being the facts, the contract expressly gave to the plaintiff an equitable and proportionate share of "all surplus or profits derived from such policies on the semi-tontine plan" as should "not be in force at the date of the completion of their respective tontine dividend periods." That contract, moreover, expressly gave to the plaintiff the choice of exercising "either" of the four options therein prescribed. One was that the plaintiff might "withdraw in cash this policy's entire share of . . . the accumulated reserve, . . . and in addition thereto the surplus apportioned by this society to this policy." The amount of the accumulated reserve is mentioned in the policy, but the surplus apportioned by the defendant to the policy is not mentioned, and there is no way for the plaintiff to ascertain the amount to which he was so entitled March 10, 1904, except by information to be derived from the defendant. So the plaintiff could only ascertain the amount to which he was so entitled March 10, 1904, under the other options by information to

be derived from the defendant. A knowledge of the facts on the part of the plaintiff was essential to an intelligent exercise of the options thus secured by the contract. One of the objects of the lengthy examination of the plaintiff under sec. 4096 was, seemingly, to compel the plaintiff to elect which clause of the contract he would rely upon, while in ignorance of the facts. The plaintiff was not bound to accept the defendant's volunteered statements as to such amounts, but for the purpose mentioned had the right to an inspection of any books, papers, or documents in the defendant's possession or under its control. Such reserve funds and surplus funds and profits are held by the defendant in trust for such policyholders, if any, as are entitled to the same, including the plaintiff. *Huber v. Martin,* 127 Wis. 412, 105 N. W. 1031, 1135. The plaintiff, as well as other policy-holders, is entitled to know the amounts and conditions of such funds. The application for inspection is not to discover whether the plaintiff has a cause of action. That is secured, if at all, by the contract itself. But it is important for the plaintiff to wisely allege facts in the complaint which he may be able to prove after having made such inspection. In the language of this court several years ago:

"We see no good reason why the proposed examination should not be had, in order that the complaint may, if possible, be made definite and certain in the particulars concerning which discovery is sought." *State v. Baetz,* 86 Wis. 29, 31, 56 N. W. 329.

The statute and the rule are remedial and should be liberally construed. *Ellinger v. Equitable L. Assur. Soc.* 125 Wis. 643, 646, 104 N. W. 811, and cases there cited. There seems to be no good ground for holding that the making of the order appealed from was an abuse of discretion.

*By the Court.*—The order of the circuit court is affirmed.

TIMLIN, J., took no part.

A motion for a rehearing was denied June 20, 1907.