BADGER BRASS MANUFACTURING COMPANY, Respondent, vs. DALY and others, Appellants.

*January 7—January 26, 1909.*

*Master and servant: Right of action for interference with contract of employment: Strikes: Injunction: Pleading: Complaint: Discovery: Examination of plaintiff before answer: Limitation of scope: Discretion.*

1. While an action to redress the wrongful prevention, by defendants, of a fellow laborer from soliciting work, from engaging in a contract to work, or from continuing in such work should ordinarily be brought by the servant so prevented, yet at the same time a right of action accrues to the master, where the servant is coerced to break an existing contract with the master, or where abuse and violence backed by conspiracy amounts to an actionable interference with the employer's rights.

2. In an action by a master to enjoin the wrongful prevention of his servants from carrying out their contracts of employment, the complaint should be detailed, certain, and specific, giving facts and circumstances, including time and place of each alleged act of coercion, the name of the person coerced, if known, the manner in which he was coerced, and the manner in which and the extent to which it affected or impeded the master's right to conduct his business in a lawful way.

3. In proceedings under sec. 4096, Stats. (1898), for the examination of a party before issue joined, the court is not concluded by the required affidavit as to what is necessary to enable the moving party to plead.

4. In proceedings under sec. 4096, Stats. (1898), taken before issue joined, the limiting of the examination so as to prevent any examination under any or either of the points set forth in the required affidavit, stated in the opinion, is *held* to show no abuse of discretion.

APPEAL from an order of the circuit court for Kenosha county: E. B. BELDEN, Circuit Judge. *Affirmed.*

The appeal is from an order limiting the examination before pleading of the plaintiff's officers at the instance of the defendants under sec. 4096, Stats. (1898), as amended.

For the appellants there was a brief by *John C. Slater,* attorney, and *Rubin & Zabel,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Slater.*

Among other references upon the part of the appellants were the following: *Walker v. Backus H. Co.* 97 Wis. 160, 72 N. W. 230; *Valley I. W. Mfg. Co. v. Goodrick,* 103 Wis. 436, 78 N. W. 1096; *Chain B. Co. v. Von Spreckelsen,* 117 Wis. 106, 94 N. W. 78; *Milwaukee v. Gimbel Bros.* 130 Wis. 31, 110 N. W. 7; *State v. Baetz,* 86 Wis. 29, 56 N. W. 329; *Schmidt v. Menasha W. W. Co.* 92 Wis. 529, 66 N. W. 695; *Ellinger v. Equitable L. A. Soc.* 125 Wis. 643, 104 N. W. 811.

For the respondent there was a brief by *Cavanagh & Barnes,* and oral argument by *C. D. Barnes.*

Among other references upon the part of the respondent were the following: *Cleveland v. Burnham,* 60 Wis. 16, 17 N. W. 126, 18 N. W. 190; *Tiede v. Schneidt,* 99 Wis. 201, 74 N. W. 798; *Schæffler v. Schwarting,* 17 Wis. 30; *Starks v. Redfield,* 52 Wis. 349, 9 N. W. 168; *Quayle v. Bayfield Co.* 114 Wis. 108, 89 N. W. 892; *Hawarden v. Youghiogheny & L. C. Co.* 111 Wis. 545, 87 N. W. 472.

TIMLIN, J. The complaint in this action averred the corporate character of the plaintiff, the nature of its business, its ownership and possession of real estate constituting its factory plant, and the value thereof, and the number of men employed by it when running at its full capacity. It then averred the existence of a voluntary association called the Metal Polishers, Buffers, Platers, Brass Moulders, Brass and Silver Workers' Union of North America, composed of

many thousand members of workmen in the lines indicated
and operating through a central organization and district
and subordinate organizations called lodges, some of the lat-
ter being in the city of Kenosha, where the plaintiff's plant
was located, and that the membership of such association
was so numerous as to make it impracticable to cause all
members to be parties to this action. Some of the defend-
ants were formerly employed by the plaintiff, but were not
so employed at the commencement of the action. It is then
averred:

"That all of the defendants named in the title of this com-
plaint have conspired, combined, and confederated together
and with each other, and with many hundred other persons
who are unknown to this plaintiff, to maliciously injure this
plaintiff, and to cripple, injure, and destroy its said business,
and that all of the members of the said Metal Polishers, etc.,
Union of North America have combined, conspired, and con-
federated together and with many other persons unknown to
this plaintiff, through the machinery of the said association
and its said locals, and otherwise, to injure, cripple, impede,
and obstruct the business of this plaintiff, for the purpose of
maliciously compelling this plaintiff to do and perform many
acts against its will, as hereinafter more particularly set out,.
and to maliciously prevent and hinder this plaintiff from do-
ing and performing lawful acts—that is to say, operating its
factory according to the wish and judgment of this plaintiff
and its officers in a lawful way; that the said defendants have
so conspired, confederated, and combined, and are now con-
spiring and undertaking and concerting together, and with
many other persons within and without said city, through
said association, its said local and otherwise: (a) to compel
this plaintiff against its will and their will, to pay, etc., (b) to
compel this plaintiff, etc., (c) to prevent this plaintiff, etc.,
(d) to prevent this plaintiff, etc., (e) to prevent this plaint-
iff, etc., (f) to prevent this plaintiff, etc., (g) to drive away
by intimidation and threats such of the workmen of this
plaintiff as are susceptible of intimidation and to entice away
others, and to induce, by intimidation or other improper and
unlawful methods, customers of this plaintiff to abandon

this plaintiff and place their trade elsewhere, (h) to persuade, etc."

The allegations of conspiracy for each of the separate purposes aforesaid are reiterated, and the pleader proceeds:

"And this plaintiff shows that, in furtherance of the said conspiracy, the said defendants have stationed and now keep upon the streets and places in front of and adjoining and adjacent to the said factory of this plaintiff many of their number, who are called by the said defendants 'pickets,' and keep said pickets to the varying number of from three to forty constantly during the day upon the said streets in the said locality, and in view of the entrance of the said premises of this plaintiff, and at the railroad depots and electric car station and stopping places in said city of Kenosha, and cause the said pickets constantly to loiter about the premises of this plaintiff and patrol the streets in front of and about said premises and about said depot, stations, and stopping places, in squads and crowds, and to threaten violence to workmen employed or seeking employment in the said plant of this plaintiff, or coming thereto in search of such employment; that the said pickets are constantly about and in the neighborhood of the said premises, and that every time that any workman leaves or approaches the said premises, or that any workman endeavors to approach said premises, or comes thereto for the purpose of seeking employment from this plaintiff, said pickets, by the use of violence, threats of violence, intimidation and abusive language, attempt, and endeavor to seduce or drive away said workmen and applicants from such employment, and stop such workmen and by physical force compel them to listen to the arguments and persuasions or threats and slanderous words of said pickets. . . . The plaintiff further alleges that the said defendants, by themselves and their co-conspirators, have on several occasions assaulted, beaten, bruised, and otherwise maltreated the employees of this plaintiff, and more especially on the 21st day of November, 1907, in furtherance of said conspiracy and for the purpose of preventing said employees from remaining in the employment of this plaintiff, and for the purpose of carrying out the said conspiracy and for the purpose of preventing this plaintiff from operating its said factory and business."

It is then averred that defendants, by themselves and through said pickets who are members of the said association, have on many occasions driven away men from the employment of the plaintiff, and that they are constantly by the use of violence and intimidation driving off such workmen, and that they give out and threaten that they will continue this course of action and will continue to boycott this plaintiff and its employees and operatives, and will, by use of the means aforesaid, prevent plaintiff from securing or retaining workmen and from securing or performing contracts in and about its business, and will so destroy the trade of the plaintiff and force the abandonment of its factory unless the plaintiff shall against its will do or refrain from the acts mentioned as the objects and purposes of the conspiracy. Then follows a substantial repetition characterizing the acts of the defendants as a nuisance in and obstructions to the highways adjacent to plaintiff's property, and that each of the defendants is a man of small means and unable to respond in damages to the plaintiff. A perpetual injunction is prayed for; also an injunction *pendente lite*.

The remarkable thing about this complaint is the generality of its averments—the lack of dates, instances, facts, or circumstances. It is made up almost wholly of conclusions of the pleader. The nearest approach to fixing time is that averment that the defendants and their co-conspirators on several occasions assaulted, beat, and otherwise maltreated employees of the plaintiff and more especially on the 21st day of November, 1907. There is nothing to show the relation of the beaten and maltreated employees to the plaintiff except the mere statement that they were employees.

When one laboring man is prevented from soliciting work, engaging in a contract to work, or continuing in his work by one or more of his fellow laborers, the more direct wrong is that done to the laboring man so coerced, and he ordinarily should bring the action to redress that wrong. At the same

time a right of action of a different nature sometimes accrues to the employer of such person, as where the workman so coerced is in this manner induced to break his existing contract with such employer, or in cases where the interference with workmen not yet under contract with the employer, but seeking employment, becomes so greatly attended with abuse and violence and backed by a conspiracy and the aid of numbers as to amount to an actionable interference with the right of the employer to carry on his lawful business. In such contests between employers and workmen there is frequent recourse to much strategy, and the law does not uphold that strategy on the part of the employer by which he seeks to obtain a blanket injunction upon a blanket complaint abounding in general conclusions but lacking in facts and circumstances; nor that strategy upon the part of employees by which, under pretense of peaceful picketing and disclaimer of responsibility for assaults and outrages which they have committed, countenanced, or encouraged, they seek to unlawfully interfere with the employer's right to conduct his own business in a proper manner. A complaint in an action for an injunction by the employer in such case should be detailed, certain, and specific, giving facts and circumstances, including time and place of each alleged act of coercion, the name of the person coerced, if known, the manner in which he was coerced, and the manner in which and the extent to which it affected or impeded the employer's right to conduct his business in a lawful way. No preliminary injunction should have been granted upon the complaint in this case.

In the case at bar, instead of demanding a bill of particulars or moving to vacate the temporary injunction or moving to make the complaint more definite and certain, or joining issue and then examining the officers of the plaintiff, the defendants by one of their number presented an affidavit under sec. 4096, Stats. (1898), as amended, alleging that dis-

covery was necessary in order to enable them to answer the plaintiff's complaint, and, averring sixty-four points upon which discovery was considered necessary, attempted to examine the officers of the plaintiff under the statute otherwise than as witnesses upon the trial. This was met by a notice of motion to limit the scope of the examination, and upon hearing of this motion the circuit court made the order appealed from, so limiting the examination as to prevent any examination upon any or either of the sixty-four points set forth in the affidavit. We cannot, without extending this opinion to an inordinate length, consider each of these sixty-four points separately. The statute in question provides:

"If such examination shall be taken before issue joined the notice of taking the same shall be accompanied by an affidavit of the party, his agent or attorney stating the general nature and object of the action, that discovery is sought to enable the party to plead and the points upon which such discovery is desired, and such examination shall be limited to the discovery of the facts relevant to such points unless the court or the presiding judge thereof, on motion and one day's notice, shall, before the examination is begun, by order further limit the subjects to which it shall extend." Sec. 4096, Stats. (1898), as amended by ch. 29, Laws of 1899, and ch. 244, Laws of 1901.

"The only pleading on the part of the defendant is either a demurrer or an answer." Sec. 2648, Stats. (1898). The answer may contain a counterclaim (sec. 2655, Stats. 1898), but no showing of the existence of a counterclaim is made. Obviously under this statute a defendant cannot by mere affidavit conclude the court as to what is necessary to enable him to answer, but that must be determined from the averments of the complaint together with the explanations or new matter set forth in the affidavit. It must appear that the points upon which discovery is desired are necessary to enable the party to answer, and, that appearing, the examination must be limited to the discovery of facts relevant to

such points; but even then the court or the presiding judge-
thereof may by order still further limit the subjects to which
the examination shall extend.     This must give the circuit
court an authority over such examinations before issue
joined, largely discretionary, and his order should not be
reversed unless there is a clear abuse of discretion.     The de-
fendants proposed to inquire whether the plaintiff was a
corporation, whether it had authority to engage in its present
business, whether it was the owner and in possession of its
plant, whether the plant was of great value, what was its
output, the number of men employed when running at full
capacity, whether the plaintiff was at the time of commenc-
ing the action running with less than its full complement of
hands or endeavoring to engage and employ workmen.     It is
obvious that none of these was necessary to enable the de-
fendants to answer.     The defendants proposed to inquire
further what knowledge or information the plaintiff had on
the following subjects: That it is prevented by the conspiracy
of the defendants from securing men; that the defendants
are members of unions; that the defendants unlawfully con-
spired, etc.; that its business would be injured, etc.     All in-
quiries directed to what knowledge or information the plaint-
iff had were obviously unnecessary to enable the defendants
to answer.

Other points upon which the examination of the plaintiff
was desired related to the manner in which the defendants
performed the acts charged and did the things charged
against them in the complaint.     All these were obviously
unnecessary for the purpose stated.     Another series of points
upon which examination was desired related to whether or
not the defendants had stationed and kept on the streets in
front of and adjoining the plaintiff's factory some of their
number, whether or not they were called pickets, whether or
not said pickets were constantly upon the streets, whether or
not said pickets collected in crowds and threatened violence

and used abusive language, etc.   All these matters were obviously within the knowledge of the defendants, and examination on these and similar subjects was not necessary to enable the defendants to answer.

Other points upon which discovery was sought for the purpose aforesaid were whether or not the allegations in paragraph 5 of the complaint are not maliciously false and untrue, and whether or not the said allegations were made pursuant to a conspiracy on the part of the plaintiff and members of an employers' association to endanger the said defendants.   Examination on such last-mentioned subjects and on some of the subjects hereinbefore noticed would be proper after issue joined, but we are not convinced that such examination was necessary in order to enable these defendants to answer the complaint, nor that the circuit court abused its discretion in so ruling.   It seems to us that the defendants have mistaken their remedy and that the order appealed from should be affirmed.

*By the Court.*—The order of the circuit court is affirmed.