ELLINGER, Appellant, vs. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

*February 17—March 9, 1909.*

*Discovery: Examination of adverse party before issue joined: Discretion: Unnecessary examination: Life insurance: Apportionment of surplus, etc., to semi-tontine policy: Pleading.*

1. If a party is entitled to the examination authorized by sec. 4096, Stats. (Supp. 1906), to enable him to plead, it should be allowed without reference to his ulterior motives, his good faith or bad faith; the court having ample power to protect the opposite party against unnecessary or improper examination.

2. The affidavit of the party seeking such examination is not conclusive upon the trial court as to the matters necessary to en-

able him to plead; and such court may in its discretion limit the subjects to which the examination shall extend or may forbid the examination entirely, and its decision will not be disturbed unless there was an abuse of discretion.

3. In an action to recover the amount due on a matured semi-tontine life insurance policy, including the surplus or profits which should equitably be apportioned thereto, plaintiff sought to examine defendant's actuary, under sec. 4096, Stats. (Supp. 1906), in order to enable plaintiff to plead. It appearing from plaintiff's affidavit that he had had inspection of defendant's books showing the whole number of such policies issued, the amount and items thereof, the total premiums, the forfeitures by lapse, and the total payments of expenses and benefits, it is *held* that the proposed examination is unnecessary, since plaintiff has sufficient information to enable him to frame his complaint, claiming a specific sum.

4. The plaintiff in such case may, if he so elect, plead by claiming an indeterminate or indefinite sum approximating a stated amount, and cast the burden upon the defendant to account for the surplus and profits promised by the contract of insurance.

APPEAL from an order of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The appeal is from an order staying and restraining a proceeding by the plaintiff to examine the defendant's actuary before issue joined, under sec. 4096, Stats. (1898), as amended by ch. 29, Laws of 1899, and ch. 244, Laws of 1901.

For the appellant there was a brief by *Kronshage, McGovern, Goff, Fritz & Hannan,* attorneys, and *Arthur F. Belitz,* of counsel, and oral argument by *Theodore Kronshage.*

Among other references upon the part of the appellant were the following: Sec. 4183, Stats. (1898); *Schmidt v. Menasha W. W. Co.* 92 Wis. 529, 66 N. W. 695; *State v. Baetz,* 86 Wis. 29, 56 N. W. 329; *Williams M. & R. Co. v. Raynor,* 38 Wis. 132; *Phipps v. Wis. Cent. R. Co.* 133 Wis. 153, 113 N. W. 456; sec. 4186, Stats. (1898); *Winner v. Bauman,* 28 Wis. 563; *Nichols v. McGeoch,* 78 Wis. 360, 47 N. W. 372; *Richards v. Allis,* 82 Wis. 509, 52 N. W. 593.

For the respondent there was a brief by *Winkler, Flanders, Bottum & Fawsett,* and oral argument by *C. F. Fawsett.*

TIMLIN, J.   This cause was before the court in 125 Wis.
643, 104 N. W. 811, where, in a proceeding by the plaintiff
under sec. 4183, Stats. (1898), to obtain inspection and
copies of books, papers, and documents, the defendant was al-
lowed to examine the plaintiff under sec. 4096, Stats. (1898),
as amended by ch. 39, Laws of 1899, and ch. 244, Laws of
1901.   Again in 132 Wis. 259, 111 N. W. 567, where the
plaintiff was permitted to proceed to obtain an inspection and
copies.   Having procured such inspection and copies, the
plaintiff sought to examine the defendant's actuary by oral
examination under sec. 4096, Stats. (1898), in order to en-
able the plaintiff to plead.   The circuit court, as stated, re-
strained and in effect forbade this examination by the order
appealed from.   This order was made upon the affidavit made
and served with the notice of the proposed examination re-
quired by sec. 4096, Stats. (1898), and other affidavits in aid
and opposed and recited in the order.   It is claimed on the
part of the respondent that these affidavits and papers taken
together show that the proposed examination was not applied
for in good faith and was merely vexatious, but we do not find
it necessary to pass on that question.   All lawsuits are some-
what vexatious, and we do not approve of the practice of in-
jecting a claim or issue of this kind into the special proceed-
ings and thus multiplying the issues.   If the plaintiff is en-
titled to the examination to enable him to plead, it should be
allowed without reference to his ulterior motives, his good
faith or bad faith.   Sec. 4096, Stats. (1898), as construed by
this court, affords ample protection against unnecessary or
improper examination without recourse to such recrimination.

In *Badger B. Mfg. Co. v. Daly,* 137 Wis. 601, 119 N. W.
328, it was decided that the statement in the affidavit of the
party seeking examination that the matters sought to be dis-
closed are necessary to enable him to plead is not conclusive
upon the circuit court, and that that court may in its discre-
tion limit the examination so as to exclude even relevant mat-
ter if such matter does not appear to be necessary to enable

the party to plead, or if for any other reason recognized by law it would be improper for the plaintiff at that stage in the action to proceed with the examination. In the case last cited the order forbade any part of the proposed examination, and under the authority of that case the order in the instant case cannot be reversed unless there appears to have been an abuse of discretion on the part of the circuit court.

From the affidavit of the plaintiff made for the purpose of procuring the examination in question it appeared that he held a twenty-year semi-tontine life insurance policy in the defendant company dated March 11, 1884, which matured March 10, 1904, a copy of which was annexed to the affidavit. To induce the plaintiff to enter into said contract the defendant made certain false and fraudulent representations with reference to the amount which plaintiff would receive at the end of the tontine period. This amount the defendant refused to pay at the end of said period, and instead offered an amount of $9,122.70, which is less than the plaintiff is justly entitled to. The tontine dividend period for the policy as stipulated therein was to expire March 10, 1904. No dividend was to be allowed or paid on the policy unless the assured survived the tontine period and the policy was then in force; and, further:

"That all surplus or profits derived from such policies on the semi-tontine plan as shall not be in force at the date of the completion of their respective tontine dividend periods shall be apportioned equitably among such policies as shall complete their tontine dividend periods."

This is quite vague, and from its words alone it would be quite difficult to say whether the surplus or profits from all semi-tontine policies outstanding on March 11, 1884, and thereafter written up to March 9, 1904, and not in force March 10, 1904, should be applied on this policy, or whether the semi-tontine policies therein referred to were only those of a class having the same tontine period, or a class maturing at some date or between some dates not specified, or it might

refer to policies of this kind written at a date or between some dates not specified. The amount of surplus or profit to be apportioned in any case would be a matter particularly within the knowledge of the defendant and not within the knowledge of the plaintiff. But in his affidavit made for the purpose of obtaining the examination the plaintiff discloses: (1) That he has had inspection of the books of the defendant. (2) That defendant began writing these semi-tontine policies in 1882 and discontinued writing them in 1899, and that their tontine periods were ten, fifteen, and twenty years. (3) These policies were upon defendant's books separated into three classes corresponding to the tontine periods mentioned, and further classified with reference to their year of issue. (4) This was kept up on said books until shortly before 1892, the time of maturity of the earliest policies of the ten-year class, when the mode of bookkeeping was changed, and the accumulation summaries of all classes of policies were merged and consolidated upon the books and the defendant estimated or assumed an hypothetical amount of surplus and profits, out of which and according to which settlements were made and surplus and profits paid upon maturing semi-tontine policies. (5) These books do not disclose to plaintiff facts or information sufficient to determine whether this is an equitable apportionment of the surplus or profits and so enable him to frame his complaint.

Right here we must differ with appellant. If this does not furnish him sufficient information to enable him to plead, it is hard to say what would do so. There is no suggestion that the books are false or forged. He has the written contract, the whole number of policies issued, the amount thereof, the items making up this, the total premiums, the forfeitures by lapse, and the total payments of expenses and benefits. That the items are numerous or the totals vast can make no difference where the data are present, the system is apparent, and the work of footing is done. Whether or not the mode of

computation of surplus and profits based on these data and employed by defendant is wrong is a question arising upon the merits, but not necessary to enable the plaintiff to plead. It involves the whole merits of the controversy, and these questions are not before the court at this stage of the litigation.

To the foregoing averments the plaintiff adds in his affidavit:

"That notwithstanding the defendant in the year 1892 and from year to year thereafter continued to compute reserve values and to apportion surplus and profits on the merger basis and hypothetical or estimated fund adopted in 1892, it. continued to enter and carry in its original records separate accounts and data for each class and year of said semi-tontine policies.in the same manner as it had done at all times prior to the year 1892."

The object in presenting this is not apparent. Its effect would be to enable appellant to make a computation of the amount due upon his policy upon various bases of computation, or to show that the defendant placed a certain construction upon this policy. Other averments in the affidavit need not be mentioned, but we may say in passing that all entries, charges, expenses, or payments appearing upon said books which the plaintiff knows or believes to be mistaken or wrong may be rejected by him in making his claim in the complaint. Hence the presence of such averments as these in the affidavit does not strengthen it. We must hold that, upon the face of the affidavit presented by the plaintiff, he shows that he has possession of all the data necessary for him to plead, claiming a specific sum in his complaint. On the other hand, the nature of the contract of insurance disclosed by the affidavit is such that the plaintiff may, if he so elect, plead by claiming an indeterminate or indefinite sum approximating a stated amount and cast the burden upon the defendant to account for the surplus and profits promised by the contract of insurance. *North Side L. & B. Soc. v. Nakielski,* 127 Wis. 539,

.544, 106 N. W. 1097; *Somervaill v. McDermott,* 116 Wis.
504, 93 N. W. 553; *Meyer v. Garthwaite,* 92 Wis. 571, 66
N. W. 704; *Schwickerath v. Lohen,* 48 Wis. 599, 4 N. W.
805; *Joy v. Walker,* 29 Vt. 257.

The conclusion of the affiant to the effect that the informa-
tion sought is necessary to enable him to make his complaint
is not binding upon the circuit court, and in this case we think
it is affirmatively shown that the examination sought is not
necessary to enable the plaintiff to frame a complaint, but
goes to the detail evidence perhaps relevant upon a trial for
the purpose of impeaching the adjustment of surplus and
profits to this policy made by the defendant, if perchance de-
fendant should answer as apparently anticipated by the
plaintiff.

Upon the authority of *Badger B. Mfg. Co. v. Daly,* 137
Wis. 601, 119 N. W. 328, the order appealed from must be
affirmed.

*By the Court.*—The order of the circuit court is affirmed.