WAGNER IRON WORKS, Appellant, vs. WAGNER and another, Respondents, and three other cases.

*April 11—May 6, 1958.*

231

233

235

236

For the appellant there were briefs and oral argument by *Morris Karon* of Milwaukee.

For the respondents there was a brief by *Wood, Brady, Tyrrell & Bruce,* and oral argument by *Thomas N. Tuttle,* all of Milwaukee.

FAIRCHILD, J.  The order appealed from was granted under sec. 269.57 (1), Stats., providing in part: "The court or a judge thereof, may, upon due notice and cause shown, order either party to give to the other, within a specified time, an inspection of property or inspection and copy or permission to take a copy of any books and documents in his possession or under his control containing evidence relating to the action. . . ."

"The language of the statute identifies the order . . . as one discretionary with the trial court.  Accordingly, we should not reverse unless convinced that the court's action constituted a clear abuse of discretion.  The statute is a remedial one and must be construed liberally. . . . The burden of establishing such abuse of discretion is on the appellant." *Tilsen v. Rubin* (1954), 268 Wis. 131, 134, 66 N. W. (2d) 648.

Appellant asserts that there is a principle that disentitles these respondents to an inspection order because appellant has been frustrated in its attempted adverse examination of Adolph Wagner by his refusal to answer material questions on the grounds that the answers might tend to incriminate him; that respondents do not need the inspection in order to plead; and that the order is too broad because many of the records to be inspected are not relevant.  Respondents contend that the order should have permitted inspection of records after, as well as before and through 1954, and that the

provision forbidding disclosure of information by respondents should be eliminated.

We conclude that no abuse of discretion has been shown and that the order should be affirmed without modification. Our conclusions upon the specific points raised are as follows:

(1) *Wagner's use of the privilege against self-incrimination.* The allegations made by the Wagner Iron Works against Wagner imply that he committed criminal offenses with reference to the property rights of Wagner Iron Works and reasonably suggest that evidence supporting these allegations might also tend to prove income-tax fraud. While appellant seems to have claimed at one point that Wagner's refusal to answer questions was contemptuous, it either abandoned that claim or was unsuccessful in establishing it. Appellant has not argued on this appeal that the refusal to answer was unfounded and contemptuous.

One purpose of the privilege against self-incrimination is to protect an innocent person from being required to give testimony that might seem to prove him guilty of a crime he did not commit. Hence, while the guilty as well as the innocent may refuse to answer, it would not be fair to consider a witness' refusal as evidence that he is guilty. Going a step farther in the present case, we do not think that Wagner's refusal to answer is evidence that he knows enough about all the transactions so that he does not need the information he will obtain from the inspection.

Wagner is a defendant, brought into court in a civil action and charged with acts which might be a basis for criminal prosecution, if proved. He has refused to answer in reliance upon his constitutional privilege. The propriety of his refusal is not challenged. He is seeking an inspection which he claims will enable him to bring out the truth. Limiting our decision to the facts before us, we know of no rule or prin-

ciple under which Wagner's use of his privilege would prevent the trial court from exercising its power to grant inspection.

Mrs. Wagner and Hampshire Investment Company stand at least as well as does Wagner in asking for inspection of the records of Wagner Iron Works.

(2) *Need for inspection before pleading.* The claims asserted by Wagner Iron Works upon the basis of the alleged improper acts of Wagner are very numerous and cover a substantial period of time as well as involve a large amount of money. It appears that the alleged transactions are not simple and it may be unlikely that an individual relying upon memory and personal records could adequately plead to the allegations. While the mandamus proceeding was pending, both Judge HANLEY and Judge O'NEILL ruled that respondents need not plead until after their inspection of records had been completed. A party has been permitted to inspect his opponent's records before pleading. *Ellinger v. Equitable Life Assur. Society* (1907), 132 Wis. 259, 111 N. W. 567; *Townsend v. La Crosse Trailer Corp.* (1948), 254 Wis. 31, 35 N. W. (2d) 325. We cannot say that the circuit court abused its discretion.

(3) *Breadth of the order.* This is the most-serious question raised by appellant. In scanning the list of documents which the order permits respondents to inspect, it is clear that some documents in each category are relevant to the allegations of the complaint. Respondents have also suggested that when the records are examined, it will develop that persons other than Wagner are responsible for some of the improprieties charged against him. Both the claims of appellant and the countercharges of respondents suggest fraudulent acts and record keeping in such fashion as to conceal the true nature of recorded transactions. Under these circumstances it is difficult for the respondents, who do

not have possession of the records, to specify just which records in a particular category may be material to the inquiry. It was doubtless difficult for the trial court to exclude parts of these categories from inspection and be reasonably sure of not excluding relevant documents. Appellant, who has possession of the records, did not give the court any help with this difficult problem.

We are mindful that the actions here involved are not between a large business corporation and an individual who dealt with it at arm's length in a limited number of transactions. Wagner was in control of the corporation and its records during the period through 1954, but since then the control has passed into the hands of Mr. Werner. The record is full of suggestions of bitter and violent differences between the two men. Although Wagner is out of control, he owns a very substantial portion of the stock, and has suggested that Werner's advantageous position with reference to the corporate affairs was wrongfully obtained. There are charges and countercharges as to whether the change in control from Wagner to Werner and certain alleged admissions by Wagner which are alleged to substantiate the corporation's present claims against him were the result of duress. Wagner will be inspecting records that were compiled when he was in charge of the transactions recorded as well as the record keeping. Under all these circumstances, including appellant's failure to suggest practicable limitations, if the trial court felt that fairness required that respondents have limited and supervised access to the entire list of records, we cannot say that the court was wrong.

(4) *Records for years after 1954.* Respondents suggest that transactions recorded since 1954 may disclose matters which they may plead by way of offsets or counterclaims. Principally they contend that Wagner was entitled to certain royalties payable after 1954 and that without inspection of

records they are unable to allege the amount which Wagner Iron Works may owe Wagner by reason of these royalties. It does not clearly appear that respondents are not in a position to make sufficient allegations upon which to seek an accounting and to obtain more specific information after issue has been joined. · The question as to inspection of records after 1954 is quite different from the inspection of earlier records and we cannot say that the trial court should be required to do otherwise than it has done.

(5) *Provisions limiting disclosure.* Respondents contend that the order unduly limits their rights to use information and copies of records which they may obtain pursuant to the inspection order. They urge· that we modify the order by striking out this entire protective provision. The order recognizes respondents' right to use the information they gain in preparation for trial as well as in the trial of the action. Those are the legitimate purposes for which the inspection is permitted. The protective provisions were doubtless inserted by the court so as to eliminate any possibility of improper use of appellant's records by respondents. The court undoubtedly recognized that the breadth of the order will permit respondents, incidentally to their inspection of relevant documents, to see some irrelevant ones. We think the protective provisions in the order are proper.

*By the Court.*—Order affirmed.

HALLOWS, J., took no part.