STATE v. NOAH WILSON.

*Disorderly House—Indictment.*

1. A disorderly house is one kept in such a way as to disturb or scandalize the public generally, or the inhabitants of a particular neighborhood, or the passers by.

2. The facts set out in an indictment, and not the words used to describe them, determine the criminality of the accused. If they show an offence to have been committed, it is sufficient to authorize conviction and punishment, although the offence is not denominated by the usual legal word used to express it.

3. An indictment which charged the defendant with keeping an "ill-governed" house, and which omitted to state that it was "to the common nuisance," &c., was held sufficient to warrant a conviction for keeping a disorderly house.

(*State* v. *Robertson*, 86 N. C., 628; *State* v. *Thornton*, Busb., 252; *State* v. *Baldwin*, 1 Dev. & Bat., 195, cited and approved).

INDICTMENT for keeping a Disorderly House, tried before *Gudger, Judge,* and a jury, at Fall Term, 1885, of the Superior Court of JACKSON county.

There was a verdict of guilty, and from the judgment thereon, the defendant appealed.

The facts are fully set out in the opinion.

*Attorney General,* for the State.
*Messrs. Reade, Busbee & Busbee,* for the defendant.

SMITH, C. J.    The defendant is charged with keeping an ill-governed house, with the usual general averments that render it disorderly and an indictable nuisance at the common law.    Upon his plea of not guilty, he was tried and convicted by the jury, and from the judgment rendered upon the verdict he appeals.

The evidence introduced to sustain the charge, in substance was, that the house was on a public highway, within a few feet of it, and a place where spiritous liquors were sold and drank, and

near by was a distillery for their manufacture, operated by the defendant and one Lewis; that lewd behavior by a daughter of the accused and said Lewis had been seen at divers times, and the former had given birth to a bastard child; that there were frequent firing of guns at the premises, both at night and in the daytime, and that it was a resort for men of bad repute, and had become annoying to eight or ten families residing in the immediate neighborhood, and so offensive that women would not pass the place unattended. This is the current of the testimony adduced to show the character of the house maintained by the defendant, and in our view shows it to be disorderly and a public nuisance, subjecting the person who keeps it to a criminal prosecution.

A disorderly house is defined by Mr. Wharton, as one "kept in such a way as to disturb, annoy or scandalize the public generally, or the inhabitants of a particular vicinity, or the passers by in a particular highway." 2 Wh. Cr. Law, §2392.

The facts in the present case, do not essentially differ from those in *State* v. *Robertson*, 86 N. C., 628. See also *State* v. *Thornton*, Busb., 252.

The instruction asked for defendant, that all the evidence adduced did not establish the character of the house as disorderly within the meaning of the law, nor prove the offence imputed to the accused, was properly refused, and the substituted instruction "that if the defendant permitted disorderly conduct, lewd behavior, shooting, and other loud noises to be carried on at his house, and these acts disturbed the neighborhood and the passers by, the defendant would be guilty," was unexceptionable and appropriate.

The proof of the birth of the illegitimate child upon the premises, to which objection is made, is concurrent with the evidence of the lascivious conduct of the mother which preceded, and all tends to exhibit the character of the house.

It is objected upon a motion in arrest of judgment, that the indictment is defective in two particulars: (1), in omitting to

charge, in words, that the defendant kept up and maintained a "*disorderly house*" according to the forms in use, the words "*ill governed*" alone not being sufficient; and, (2), in omitting the conclusion that the acts specified were "to the common nuisance," &c. Neither of the grounds assigned warrants the motion in arrest.

I. The facts set out in the indictment, and not the words used to describe them, determine the criminality of the accused. If they show an offence to have been committed, it is sufficient to authorize conviction and punishment, though the offence which they constitute is not denominated by the proper legal word to express it, and which is commonly used.

II. The same remark is equally applicable to the other omission, and, in place of our own comments, we reproduce the language of that distinguished Judge, whose learning and the pure diction in which it is conveyed, illuminate so many of the pages of our Reports.

"If the facts charged," says GASTON, Judge, "must from their very nature, have created a nuisance to the citizens in general, *ad commune nocumentum*, though always proper and safest to be inserted, may be omitted, for they neither describe the crime nor the facts which constitute it. *Such facts necessarily show the crime.* If the facts charged, show an offence, inconvenient and troublesome, that *may* have extended its annoyance to the community, or may have reached only certain individuals of that community, the averment of *ad commune nocumentum* becomes indispensable." *State* v. *Baldwin*, 1 Dev. & Bat., 195.

The exceptions and the motion were properly overruled, and there is no error in the record. This will be certified, that the Court may proceed to judgment.

No error.                                    Affirmed.