HAWKINS, Respondent, vs. LUTTON and others, Appellants.

*February 25 — March 16, 1897.*

*Disorderly house: Arrest without warrant: Appealable order.*

1. At common law the term "disorderly house" means a house the inmates of which behave so badly as to become a nuisance to the neighborhood, or one which is kept in such a way as to disturb or scandalize the public generally, or the inhabitants of a particular locality, or the passers-by; and it has that meaning in a city ordinance which provides for the punishment of any person found in

a "disorderly house, or a house of ill fame, or a place resorted to for the purpose of prostitution." To be a "disorderly house" it need not be a house of prostitution.

2. A city council may lawfully, by ordinance, authorize police officers to arrest without warrant persons engaged in their presence in a breach of the piece, i. e. a disturbance or violation of public order; and an officer who from the outside of a house hears a disturbance or disorderly conduct within it may, acting in good faith under such authority, enter the house and arrest the person guilty thereof as being an inmate of a disorderly house.

3. An order denying a motion for a new trial, based on the minutes of the court, is not appealable under ch. 212, Laws of 1895.

APPEAL from a judgment of the superior court of Douglas county: CHARLES SMITH, Judge. *Reversed.*

This was an action to recover damages for an alleged false imprisonment of the plaintiff by the defendant *Lutton*, the city marshal of the city of Superior, and his five codefendants, policemen of said city. The plaintiff charges the defendants with having assaulted and imprisoned the plaintiff, and deprived her of her liberty for the space of one day, May 18, 1895, contrary to her will, etc. The defendants answered jointly, in substance, though in a crude and imperfect manner, that they were at the time such officers, respectively, as stated, and that they arrested the plaintiff without warrant, pursuant to section 268 of the ordinances of the city of Superior, by which it was made the duty of the marshal, superintendent of police, and all police officers and watchmen to summarily arrest and take before the police justice of the city all persons in the act of violating any of the provisions of the general laws of the city, or any ordinances passed in accordance therewith, and to make complaint before said justice against such offender, and which allowed a detention of the person arrested in the watch-house or jail for twenty-four hours, Sunday excepted, before taking such person before such justice; that the plaintiff was arrested on the charge of having, on said 15th day of

May, 1895, at said city, violated section 283 of the ordinances of said city, " in that she did then and there, contrary to said ordinance, be an inmate of, visit, resort to, frequent, and be found in, a disorderly house, house of ill fame, and place resorted to for the purpose of prostitution, assignation, and fornication," with which offense she was in the forenoon of the next day charged, on complaint of said defendant *Lutton*. It was alleged that the defendants, in so arresting the plaintiff, acted in good faith, and without malice, and had probable cause to believe the plaintiff guilty; and, upon information and belief, they charged that she was guilty of said offense, and that she was arrested in and taken from a *disorderly house* in the said city of Superior.

At the trial, the plaintiff produced evidence tending to support her complaint, and that upon the trial in municipal court, on the day after the arrest, she was acquitted of the charge against her, and tending to show that she was not guilty of the said charge. It appeared that the plaintiff and her sister were arrested about 10 o'clock in the evening, and were released upon bail, after a detention of about two hours.

On the part of the defendants, evidence was given by the defendant *Lutton* that he was chief of police, and, on the evening in question, was going past the plaintiff's house, and some police officers were standing in front of it; that he staid there two or three minutes, and heard very loud talking in the house,— profane and indecent language,— and learned that the officers had been called there by some of the neighbors; that, after listening two or three minutes, he told the officers to *pull* the house for a disorderly house. It appeared from what he heard that they either had a fight there, or there had been one. There were two male and two female voices. It was a female voice that was doing the principal talking. The language was loud, profane, and indecent. That it was profane and indecent was clear from the evidence of the witness. Defendants' counsel asked the

witness if he knew the reputation of this house at that time, as to its being a disorderly house, bawdy house, or house of ill fame.   Upon objection made, the court ruled that the defendants might show that the plaintiff's house, at the time of the arrest, was a house of prostitution, but not that it was a disorderly house, in the sense that there were disorderly noises, loud, boisterous, profane, and obscene language frequently emanating therefrom, and fighting or quarreling and conduct of that kind carried on therein; and evidence offered by the defendants of that character, to maintain their defense, was then and during the trial excluded, although admitted to some extent as bearing on the question of the character of the house.   Evidence was given tending to show that the house had the reputation, at the time, of being a house of prostitution, and that the plaintiff had the reputation of being a prostitute, and that her sister, living there, had the same reputation; and the evidence tended to show that, shortly prior to the arrest, complaints had been made to the police as to the character of the house and the trouble going on there, and that liquor was carried there through the day and night by strange men.   Considerable evidence was given tending to show that the house was frequented by strange men at late hours.

In rebuttal, the plaintiff produced evidence tending to show that the house was not a house of prostitution; that the disturbances there were caused by plaintiff's brother, when intoxicated; and that no woman living there used obscene or indecent language.

The court instructed the jury, among other things, that "the word 'disorderly,' in the ordinance, must not be construed to mean a house in which quarrels, disturbances, and that class of things occur, but must be construed in the more restricted sense, as meaning a house used for the purpose of prostitution, gambling," etc.; that "the burden of proof was upon the defendants to show, by a preponderance of

evidence, that the house where the plaintiff was arrested was a place resorted to for prostitution; that the reputation of the house is not conclusive as to its being a house of prostitution, but is merely evidence, and the *fact* that it was such house must be proved by a preponderance of the evidence to your satisfaction, before this arrest can be justified. Was the house where the arrest was made such a house as the ordinance covers? If yes, did plaintiff reasonably seem to the defendants to be there for immoral purposes? If you answer both of these questions in the affirmative, your verdict will be for the defendants; otherwise, it will be for the plaintiff."

There was a verdict for plaintiff for $500. After verdict, the defendants filed in court a release and discharge, executed and acknowledged by the plaintiff, whereby, in consideration of $40, she released and discharged them from all liability by reason of the verdict rendered in the action and any judgment that might be entered thereon, and costs, and from all liability and obligation for damages sustained by her by reason of said false imprisonment, and any cause of action she might have against the defendants. After judgment, upon motion founded upon and opposed by affidavits, the court made an order vacating and setting aside said release, and reinstating the verdict and judgment, and directing the $40, less $10, costs of motion, to be returned to the defendants. The defendants appealed from said judgment, and from said order, as well as from an order denying a motion for a new trial, founded on the minutes of the court.

For the appellants there was a brief by *Reed & Reed* and *H. W. Dietrich*, and oral argument by *Mr. Dietrich.*

For the respondent there was a brief by *Loud & O'Brien*, and oral argument by *W. R. Foley*. They contended that the defendants had no right to arrest the plaintiff, there being no evidence that she was guilty of any noise or dis-

Hawkins vs. Lutton and others.

turbance. *Griffin v. Coleman*, 4 Hurl. & N. 265; *Bowditch v. Balchin*, 5 Exch. 380; *People v. Haley*, 48 Mich. 495; *People v. Baitz*, 53 id. 495. A police officer had no right to arrest without a warrant except for a felony or breach of the peace committed in his presence. *Drennan v. People*, 10 Mich. 169; *Wahl v. Walton*, 30 Minn. 506; *People ex rel. Kingsley v. Pratt*, 22 Hun, 300; *Shanley v. Wells*, 71 Ill. 78.

PINNEY, J.   1. The ordinance for the violation of which the defendants arrested the plaintiff provides that "any person who shall, within the limits . . . be an inmate of, visit, resort to, frequent, or be found in a *disorderly house or place*, or a house of ill fame, or a place resorted to for the purpose of prostitution, assignation, fornication, or for the resort of persons of ill fame, or ill name, or dishonest conversation, or common prostitutes, shall, upon conviction thereof, be punished," etc.   The trial court held that a house could not be considered a disorderly house unless it was a house of ill fame, resorted to for the purpose of prostitution, assignation, fornication, gambling, etc., and charged the jury that the arrest of the plaintiff could not be justified unless the fact that the house of which the plaintiff was an inmate was a house of prostitution was proved to the satisfaction of the jury; that the word "disorderly" must not be construed to mean a house in which quarrels, disturbances, and that class of things occur, but must be construed in the more restricted sense, as meaning a house used for the purpose of prostitution, gambling, etc.   The ordinance is clearly directed against disorderly houses and places, independent of the question whether they are houses of ill fame, or places resorted to for the purpose of prostitution, etc., or for the resort of persons of ill fame or ill name or dishonest conversation, or common prostitutes.   A house the inmates of which behave so badly as to become a nuisance to the neighborhood is esteemed, at common law, a disorderly house, and

so of one which is kept in such a way as to disturb or scandalize the public generally, or the inhabitants of a particular neighborhood, or the passers-by. 2 Wharton, Cr. Law (7th ed.), § 2392; 5 Am. & Eng. Ency. of Law, 693; *State v. Wilson*, 93 N. C. 608. And it seems that a complaint for keeping such a house may be maintained by proof that only one person in the neighborhood or community was disturbed or annoyed, if the acts done were of such a nature as tended to annoy all good citizens. *Comm. v. Hopkins*, 133 Mass. 381. The term "disorderly house" denotes a house or other like place in which people abide, or to which they resort, disturbing the repose of the neighborhood, violating public order and tranquillity. 1 Bish. Cr. Law, § 1106; *Garrison v. State*, 14 Ind. 287. The ruling of the trial court was clearly erroneous, and, in its application to the case, practically nullified an important clause of the ordinance, designed to preserve the public peace. The same error occurs in other instructions given, and in instructions refused, and in ruling that evidence that there were disorderly noises, boisterous, profane, and obscene language, frequently emanating from the house, and fighting and quarreling and conduct of that kind carried on therein, could not be received as a justification of the arrest. The court, however, admitted considerable such evidence, but erroneously restricted its effect to showing, in connection with other facts, that the house was a house of prostitution. It is said that the defense that the house here in question was a disorderly house was not set up in the answer, but we think that the answer, though crude and general, was sufficient, in substance, to admit the evidence. The remedy of the plaintiff, if it was deemed indefinite and uncertain, was by motion to correct the answer.

2. It is argued that the arrest of the plaintiff without a warrant was illegal, and cannot be justified. The defendants, by virtue of their offices, were conservators of the pub-

lic peace, and had a right at common law to arrest all persons who were guilty of a breach of the peace, or other violation of the criminal laws, in their presence; but in all such cases the arrest must be made at the time of the offense, or immediately after its commission. The provisions of the ordinance pleaded in that behalf are substantially to the same effect, and authorized a summary arrest of any one in the act of violating any of the general laws, or any ordinances of the city passed in accordance therewith. The city council had power to pass such an ordinance, authorizing police officers to make arrests of persons engaged in a breach of the peace without warrant, such authority not being repugnant to the general laws of the state. 1 Am. & Eng. Ency. of Law, 735, notes, and cases cited; *Comm. v. Hastings,* 9 Met. 259; *White v. Kent,* 11 Ohio St. 550. A disturbance and violation of public order is a breach of the peace. 2 Am. & Eng. Ency. of Law, 515. The evidence tends to show that the alleged violation of the ordinance may fairly be said to have been committed in the presence of the defendants. They had heard the disturbance and disorderly conduct from the outside of the house, and the evidence tends to show that they had been summoned there, or their attention had been attracted to it. The chief of police arrived in time to become aware of the conduct in progress within, and, acting in apparent good faith and on what appeared to be reasonable ground, ordered the house to be *pulled.* The policemen at once entered the house, and found the plaintiff an inmate and abiding therein. The evidence tends to show that she was its proprietor. The authority of conservators of the public peace to make arrests in such cases should be liberally construed and upheld, but always at the risk that they will be liable if it be misused or abused. *People v. Bartz,* 53 Mich. 493; *Ballard v. State,* 43 Ohio St. 340; *O'Connor v. Bucklin,* 59 N. H. 589; *State v. Russell,* Houst. Cr. Cas. 122.

For these reasons, we think there must be a new trial. The order setting aside the release appears to have been warranted by the facts, and should be affirmed. The appeal from the order refusing a new trial cannot be sustained. The order was not appealable. Laws of 1895, ch. 212.

*By the Court.*— The order setting aside the release, appealed from, is affirmed; the judgment of the superior court is reversed, and the cause remanded for a new trial; and the appeal from the order refusing a new trial is dismissed.