EDWARDS, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 10—May 11, 1926.*

*Arrest: By officer without warrant: Person engaged in criminal act: Entering apartments where crime is being committed.*

1. A police officer may arrest one committing a crime in his presence whether it be a misdemeanor or a felony. p. 231.
2. Evidence that two police officers saw defendant and a man not her husband enter a bedroom in her apartment under circumstances which indicated a criminal purpose, is *held* sufficient to justify the officers in entering the apartment without a warrant and arresting the defendant, whom they actually found engaged in committing a crime. p. 233.
3. The authority of a police officer does not await the commission of a crime, it being as much his duty to prevent crime as to arrest after the event. p. 234.

ERROR to review a judgment of the municipal court of Milwaukee county: GEORGE A. SHAUGHNESSY, Judge. *Affirmed.*

*Edward J. Burke* of Milwaukee, for the plaintiff in error.

For the defendant in error there was a brief by the *Attorney General, Eugene Wengert,* district attorney of Milwaukee county, and *George A. Bowman,* special assistant district attorney, and oral argument by *Mr. Bowman.*

OWEN, J. Plaintiff in error (hereinafter called the defendant) was convicted of the crime of sodomy, and brings writ of error to review the judgment. It appears that on the evening of July 4, 1925, two police officers of the city of Milwaukee, John McGarvey and John A. McCarthy, pursuant to orders issued by the lieutenant of police, stationed themselves in an automobile across the street from the apartment in which the defendant with her husband resided. While they were so stationed they saw her engaged in conversation with her codefendant, Edward Keeley, on the sidewalk, a short distance from the stairway leading to her apartment. Presently they saw defendant leave Keeley and return to her apartment. Within a few minutes they saw Keeley likewise go up the stairway leading to her apartment. Shortly thereafter they saw a light turned on in the bedroom of the apartment. They saw defendant and Keeley in the bedroom and saw her pull down the shade. They then saw the husband of defendant come down the stairway, look up and down the street, and return. Thereupon they proceeded to the apartment through a rear entrance. They went through a hallway and found an open door. It proved to be the kitchen door of defendant's apartment. They found the husband standing in the open doorway. They told him who they were, and the husband admitted them into the kitchen. McGarvey told McCarthy to stay and watch the husband, and he proceeded through the apartment, passing through three or four rooms before he reached the bedroom, in which he

Edwards v. State, 190 Wis. 229.

found defendant and Keeley lying on the bed. McCarthy returned to the kitchen and summoned McGarvey. They both returned to the bedroom, where they saw defendant and Keeley in the commission of a crime, and there arrested them. They were both convicted of the crime of sodomy.

It is claimed by the defendant that the presence of the officers in the house was illegal, and that the information acquired by them while in the house should not have been received in evidence. A ·timely motion made on the part of the defendant to suppress the testimony was denied by the trial court.

It is too well settled to require the citation of authority that an officer may arrest one committing a crime in his presence, whether it be a misdemeanor or a felony. In *Ex parte Morrill*, 35 Fed. 261, at p. 267, it is said that "a crime is committed in the presence of the officer when the facts and circumstances occurring within his observation, in connection with what, under the circumstances, may be considered as common knowledge, give him probable cause to believe, or reasonable ground to suspect, that such is the case. It is not necessary, therefore, that the officer should be an eye or an ear witness of every fact and circumstance involved in the charge, or necessary to the commission of the crime."

In *Hawkins v. Lutton*, 95 Wis. 492, 70 N. W. 483, it appeared that police officers standing in the street heard loud, boisterous, obscene, and profane language in an adjacent house. They raided the house and arrested the inmates. They were sued for false imprisonment, it being claimed that they had no authority to make the arrest. The court said:

"The evidence tends to show that the alleged violation of the ordinance may fairly be said to· have been committed in the presence of the defendants. They had heard the disturbance and disorderly conduct from the outside of the

house, and the evidence tends to show that they had been summoned there, or their attention had been attracted to it. The chief of police arrived in time to become aware of the conduct in progress within, and, acting in apparent good faith and on what appeared to be reasonable ground, ordered the house to be *pulled*. The policemen at once entered the house, and found the plaintiff an inmate and abiding therein. The evidence tends to show that she was its proprietor. The authority of conservators of the public peace to make arrests in such cases should be liberally construed and upheld, but always at the risk that they will be liable if it be misused or abused."

In *Comm. v. Tobin,* 108 Mass. 426, it is held that a constable has a right by virtue of his office without a warrant to enter through an unfastened door a house in which there is a noise amounting to a disturbance of the peace and arrest any person disturbing the peace there in his presence.

In *Ford v. Breen,* 173 Mass. 52, 53 N. E. 136, it appeared that the plaintiff was intoxicated and was committing a breach of the peace in the dwelling house where she resided; that the police officers entered the house and arrested her without a warrant. The court held that the entry of the dwelling house and the arrest was authorized by a statute which provided that "Whoever is found in a state of intoxication . . . committing a breach of the peace or disturbing others by noise, may be arrested without a warrant by a sheriff, deputy sheriff, constable, watchman, or police officer."

In *Agnello v. U. S.* 269 U. S. 20, 46 Sup. Ct. 4, it appears that one Napolitano and one Dispenza, employed by government revenue agents for that purpose, went to the home of one Alba on Saturday, January 14, 1922, and there offered to buy narcotics from said Alba and one Centorino. Alba gave them some samples. They arranged to come again on Monday following. They returned at the time agreed. Six revenue agents and a city policeman followed

them and remained on watch outside. Alba left the house and returned with Centorino. They did not then produce any drug. After discussion and the refusal of Napolitano and Dispenza to go to Centorino's house to get the drug, Centorino went to bring it. He was followed by some of the agents. He first went to his own house, 172 Columbia street, thence to 167 Columbia street,—one part of which was a grocery store belonging to one Pace and Thomas Agnello, and another part of which, connected with the grocery store, was the home of Frank Agnello and Pace. In a short time Centorino, Pace, and the Agnellos came out of the last mentioned place, and all went to Alba's house. Looking through the windows, those on watch saw Frank Agnello produce a number of small packages for delivery to Napolitano, and saw the latter hand over money to Alba. Upon the apparent consummation of the sale, the agents rushed in and arrested all the defendants.

The legality of this arrest is thoroughly considered by the circuit court of appeals for the Second circuit in 290 Fed. 671, where it is upheld. The supreme court of the United States disposes of the legality of the arrest in the following language: "The legality of the arrests, or of the searches and seizures made at the home of Alba, is not questioned."

We have no doubt of the legality either of the defendant's arrest or of the presence of the officers in her apartment. The police officers were in possession of abundant facts which, in connection with common knowledge, were very convincing that a crime was either being committed when they entered the house or was about to be committed. Defendant was known to the police. She had been arrested before. Evidently her apartment was under suspicion as a disorderly place. The lieutenant of police dispatched these two officers to surveil her premises. While they did not see the actual commission of the crime before they en-

tered the premises, they saw enough to leave no doubt of the criminal purpose of the defendant. The authority of a police officer does not await the commission of crime. It is as much his duty to prevent the commission of crime as to arrest after the event. Their knowledge as to what was going on in the bedroom where defendant was arrested was fully as convincing of the commission of crime as was the knowledge of the officers who looked through the windows in the *Agnello Case*. In that case the officers did not know that the packages delivered contained cocaine. To uphold defendant's contention would seriously embarrass the enforcement of law and license the defendant and her kind to continue their abominable practices under the protection of the law.

*By the Court.*—Judgment affirmed.