CITY OF NEENAH, Respondent, v. ALSTEEN, Appellant.

*March 3—May 10, 1966.*

For the appellant there were briefs by *Van Susteren, Bollenbeck, Patterson, Froehlich & Jensen* and *Edward R. Bollenbeck,* all of Appleton, and oral argument by *Edward R. Bollenbeck.*

For the respondent there was a brief and oral argument by *Charles E. Schaller,* city attorney.

HEFFERNAN, J. The defendant sought the adverse examination of the plaintiff's police officers under the provisions of sec. 326.12, Stats.[1]

This statute provides that the right of adverse examination shall be available "in any civil action."

The trial judge, however, took the position that the particular violation was unlike the ordinary civil action in that it partook of many of the characteristics of a criminal action. In his opinion he particularly stressed the recent case of *Madison v. Geier* (1965), 27 Wis. (2d) 687, 135 N. W. (2d) 761, which held that where conduct complained of under an ordinance is also a crime under a parallel state law, the burden of proof must be sustained by evidence that is "clear, satisfactory, and convincing," rather than a "mere preponderance." Emphasis is also placed on our conclusion in *Milwaukee v. Wuky* (1965), 26 Wis. (2d) 555, 562, 133 N. W. (2d) 356, that a defendant in a municipal forfeiture action is not entitled to a special verdict, but rather to a verdict of guilty or not guilty.

We stated in *Milwaukee v. Wuky, supra,* page 562, "that it is an oversimplification to treat forfeiture actions as purely civil in nature." However, it should be noted that in that very case we relied upon the opinion of *Girtz v. Oman* (1963), 21 Wis. (2d) 504, 509, 510, 124 N. W. (2d) 586, and the "wide discretion possessed by the

---

[1] "326.12 DEPOSITIONS; PURPOSE, PROCEDURE, SCOPE, USE, EFFECT AND RELATED MATTERS. (1) *When Depositions May Be Taken.* In any civil action or proceeding, any party may examine any person, including a party, by deposition upon oral examination at any time before final determination thereof, for the purposes of discovery or for use as evidence in the action or for both purposes."

*N. B.* Ch. 326 of the statutes was renumbered as ch. 887 by ch. 66, Laws of 1965, effective May 26, 1965, and now appears as sec. 887.12 (1).

trial court to amend pleadings in a *civil* action . . . ."
(Emphasis supplied.) *Wuky, supra,* page 560. We also
pointed out that the statutes (sec. 66.12) require a plea
of not guilty, guilty, or *nolo contendere;* and, hence, the
verdict couched in the terms of guilty or not guilty deter-
mines the only issues that are before the court or jury
pursuant to the plea. In that sense, the verdict is a
special one.[2]

It should also be noted that, on grounds of public
policy, we concluded that the so-called "middle burden
of proof" should be utilized in enforcing municipal
ordinances that were also crimes under the statute; but,
significantly, that conclusion was reached by analogy to
similar *civil* actions prosecuted by private individuals.
The court said:

"We considered ordinance forfeiture cases so far as the
elements of the violation were concerned when the acts
also amounted to a crime to be in that class of civil
actions which involved fraud, undue influence, criminal
acts, reformation, mutual mistakes, and others, which
public policy requires to be proved by evidence which is
clear, satisfactory, and convincing. We saw no difference
in such a civil case being prosecuted by a private citizen
and a municipality." *Madison v. Geier, supra,* page 692.

The analogy drawn in *Geier* is to the *civil* fraud case
and the conclusion to be drawn from *Geier* is not that an
ordinance violation is criminal in nature, but rather that
it is a civil action similar to the fraud and undue-in-
fluence cases that, for public policy reasons, require the
"middle burden of proof."

---

[2] The fact that *Wuky* denies the right of a special verdict does
not mean that the judge should not in the appropriate case make
a finding of guilt as to the specific offense charged, *e. g.,* if
charged with operating 20 miles per hour in excess of the speed
limit, a fact that is determinative of the motor vehicle depart-
ment's imposition of penalty points, the judgment should be,
"guilty of violating ——— ordinance, by operating his motor
vehicle 20 miles per hour in excess of the speed permitted."

That the essential nature of a forfeiture action is civil is explicit in our statutory law. In the chapter on municipal law, it is provided in sec. 66.12 (1) (a), Stats., that "an action for violation of a city or village ordinance, resolution or bylaw is a civil action."

This terminology is particularly significant since that section, sec. 66.12, Stats., then goes on to provide that the forfeiture or penalty may be collected in an action commenced by a warrant, and may be coupled with the arrest and holding for trial unless bail is furnished. Lest, however, anyone should conclude that this procedure, having the overtones of criminal law, should be construed as changing the essential nature of the action, the entire section was prefaced with the statement that negates any implication that the legislature contemplated that ordinance enforcement is criminal in nature. While utilizing the valuable procedural tools of the criminal law (to the extent stated), the legislature made it crystal clear that "an action for violation of a city or village ordinance . . . is a civil action."

Moreover, the quasi-criminal procedure set forth in ch. 66, Stats., is but one way of enforcing a village or city ordinance. Ch. 288 provides that:

"288.10 MUNICIPAL FORFEITURES, HOW RECOVERED. All forfeitures imposed by any ordinance or regulation of any county, town, city or village, or of any other domestic corporation may be sued for and recovered, pursuant to this chapter, in the name of such county, town, city, village or corporation. It shall be sufficient to allege in the complaint that the defendant is indebted to the plaintiff in the amount of the forfeiture claimed, specifying the ordinance or regulation which imposes it. . . ."

This is a purely civil action and is a time-honored method of enforcing municipal ordinances and collecting a forfeiture for their violation. We stated in *South Milwaukee v. Schantzen* (1950), 258 Wis. 41, 43, 44 N. W. (2d) 628:

"The statutes authorize the collection of forfeitures in two ways: By suit based upon a complaint (sec. 288.10, Stats.), and by an affidavit by the plaintiff or someone in his behalf followed by the issue of a warrant . . . ."

Sec. 260.05, Stats., provides that:

"Actions are of two kinds, civil and criminal. A criminal action is prosecuted by the state against a person charged with a public offense, for the punishment thereof. Every other is a civil action."

We held in *State ex rel. Keefe v. Schmiege* (1947), 251 Wis. 79, 84, 28 N. W. (2d) 345, that under the Wisconsin constitution, sec. 22, art. IV, crimes or misdemeanors cannot be created by city ordinances. We thus have subsequently held that, "An action to recover a forfeiture for violation of an ordinance is thus a civil proceeding and its procedure is that of other civil proceedings." *South Milwaukee v. Schantzen, supra,* page 43.

Our cases have followed this rationale, and in practice this court has consistently treated the proceedings to enforce an ordinance as a civil action.

Instances of that approach have been cited above. In addition, this court has held that amendment of pleadings is the same as in other civil actions.[3] A city has the right to call the defendant adversely in a forfeiture action.[4] Either party to a forfeiture action may demand a jury trial under the civil-procedure statutes.[5] The trial judge has the power to set aside a jury verdict and to enter judgment according to the proof.[6] The aggrieved party

[3] *Sauk County v. Schmitz* (1961), 12 Wis. (2d) 382, 386, 107 N. W. (2d) 456; *Neenah v. Krueger* (1932), 206 Wis. 473, 476, 240 N. W. 402; *Milwaukee v. Wuky* (1965), 26 Wis. (2d) 555, 558, 133 N. W. (2d) 356.

[4] *Milwaukee v. Burns* (1937), 225 Wis. 296, 299, 274 N. W. 273.

[5] *State ex rel. McStroul v. Lucas* (1947), 251 Wis. 285, 290, 29 N. W. (2d) 73.

[6] *Oshkosh v. Lloyd* (1949), 255 Wis. 601, 603, 39 N. W. (2d) 772.

may not take a writ of error as in a criminal case but must appeal.[7] The court may allow inspection under sec. 269.57, Stats., of property (drunkometer) in possession of the city.[8] In respect to imprisonment, the criminal form of judgment may not be used.[9] It was held that an appeal from an ordinance violation must be taken from the municipal court to the county court under the civil statutes and not to the supreme court under the existing criminal statutes.[10] Additionally, the city has the same right of appeal as the defendant, clearly following the civil rule and unlike the state's limited right of appeal under the criminal law.[11]

We conclude that prosecution for the violation of an ordinance is a civil action as referred to in sec. 326.12, Stats., providing that in "any civil action or proceeding, any party may examine any person . . . upon oral examination . . . ." Therefore, the defendant under this statute was authorized to examine the city's officers adversely.

*Did the trial judge's refusal to allow the adverse examination constitute an abuse of discretion?*

To conclude, as we did above, that an adverse examination is generally available in a civil action is not sufficient to dispose of the case before us. While the adverse

---

[7] *Milwaukee v. Johnson* (1927), 192 Wis. 585, 590, 213 N. W. 335, overruling *Platteville v. McKernan* (1882), 54 Wis. 487, 11 N. W. 798, and *Boscobel v. Bugbee* (1876), 41 Wis. 59.

[8] *Appleton v. Sauer* (1956), 271 Wis. 614, 617, 74 N. W. (2d) 167.

[9] *Kuder v. State* (1920), 172 Wis. 141, 145, 178 N. W. 249.

[10] *Waukesha v. Schessler* (1941), 239 Wis. 82, 84, 300 N. W. 498.

[11] *Milwaukee v. Stanki* (1952), 262 Wis. 607, 609, 55 N. W. (2d) 916.

examination is available in any civil action, its use may be suppressed or circumscribed under the terms of the statutory provisions that create the right. Sec. 326.12 (3), Stats., provides that:

"After notice is served for taking a deposition, upon motion reasonably made by any party or by the person to be examined, and, upon notice and for good cause shown, the court may make an order that the deposition shall not be taken, or that certain matters shall not be inquired into, or any other order which justice requires to protect the party or witness from annoyance, embarrassment or oppression."

In this particular case, the attorney for the city of Neenah, in his motion for an order directing the defendant to show cause why the subpoenas should not be quashed, relied entirely upon the contention that, "a forfeiture proceeding is not to be treated as a civil action for the purposes of Section 326.12, Wisconsin Statutes." As discussed above, we cannot agree with that analysis, and must accordingly conclude that the motion papers failed to show "good cause" why the depositions should not be taken. The trial judge relied almost completely upon the proposition that adverse examination of the police officers was not to be permitted in a criminal or quasi-criminal case. To the extent that a municipal forfeiture action is thus labeled and, hence, beyond the purview of sec. 326.12, Stats., we must disagree with the trial judge.

However, the trial judge pointed out that the privileges granted by sec. 326.12, Stats., were subject to abuse and that the unbridled use of the technique of adversely examining police officers could lead to the disruption of orderly law enforcement. The trial judge correctly stated that he was empowered to "protect against abuse of legal procedures." We agree with that statement as a general proposition and specifically consider it applicable to the judge's power to suppress examinations that

are brought under sec. 326.12. The statute provides that, upon good cause shown or if justice so requires, a witness may be protected from the annoyance, embarrassment, or oppression that might result from such an examination. The annotations appearing under sec. 326.-12 are replete with instances where circumstances have made proper the exercise of the trial judge's discretion to suppress the examination.

While we have heretofore concluded that in certain circumstances an examination under sec. 326.12, Stats., might be suppressed when a matter to be inquired into was obviously within the knowledge of the moving parties (*American Food Products Co. v. American Milling Co.* (1912), 151 Wis. 385, 399, 138 N. W. 1123; *Badger Brass Mfg. Co. v. Daly* (1909), 137 Wis. 601, 609, 119 N. W. 328), this is not the sole criterion. Because the defendant has some general knowledge or even detailed knowledge of the circumstances of his alleged violation does not *ipso facto* mean he should be denied the statutory right to adversely examine witnesses under sec. 326.12. The purpose of an adverse examination is discovery, and the fact that the plaintiff may have knowledge of the occurrence does not prevent him from ascertaining in advance of trial the knowledge that others may have. Moreover, there is nothing in the record to show that the city relied on this argument or produced any facts to show that the knowledge of the defendant constituted "good cause" under the statute for the suppression of the examinations. In its motion the city relied exclusively on the civil-criminal distinction.

No finding was made, and it was not asserted by the city in its moving papers, that justice required that the witnesses be protected from annoyance, embarrassment, or oppression. We conclude that, in the absence of facts to justify the order of the court, the order quashing the subpoenas amounted to an abuse of discretion.

Statistics furnished the court by the League of Wisconsin Municipalities indicate [12] that though the avail-

[12] *"Questionnaire in re Adverse Examination*

1. In municipal ordinance violation cases in your municipality, do you employ adverse examination or discovery against defendant:

| | *Frequently* | *Infrequently* | *Never* |
|---|---|---|---|
| Cities over 35,000 | | 4 | 8 |
| Cities 10,000–35,000 | 1 | 3 | 21 |
| Villages 10,000–35,000 | 1 | | 3 |
| Cities 4,000–10,000 | 7 | 13 | 19 |
| Villages 4,000–10,000 | | 1 | 7 |
| | 9 | 21 | 58 |

2. In municipal ordinance violation cases in your municipality, do defendants employ adverse examination or discovery against city or village officers such as police:

| | *Frequently* | *Infrequently* | *Never* |
|---|---|---|---|
| Cities over 35,000 | | 11 | 1 |
| Cities 10,000–35,000 | | 14 | 11 |
| Villages 10,000–35,000 | | 3 | 1 |
| Cities 4,000–10,000 | 2 | 17 | 20 |
| Villages 4,000–10,000 | 1 | 2 | 5 |
| | 3 | 47 | 38 |

3. Do you consider use of adverse examination or discovery in the prosecution of municipal ordinance violations:

| | *Worthwhile* | *Of Little Use* | *Useless* |
|---|---|---|---|
| Cities over 35,000 | 4 | 7 | 1 |
| Cities 10,000–35,000 | 5 | 13 | 5 |
| Villages 10,000–35,000 | 1 | 2 | 1 |
| Cities 4,000–10,000 | 22 | 13 | 2 |
| Villages 4,000–10,000 | 3 | 4 | 1 |
| | 35 | 39 | 10 |

These questions were asked of municipal attorneys in 95 cities and villages in March 1966. Responses from 88 such municipal attorneys were received, as shown above."

ability of adverse examination in ordinance cases is widely accepted, it is little used. In no city over 35,000 population was it frequently used. In only two cities and one village did defendants frequently adversely examine police officers. In 85 cities and villages it was infrequently or never used by the defendants. Nevertheless, 35 municipal attorneys considered the use of the adverse examination was worthwhile, while 39 thought it of little use, and 10 considered it useless.

The judicial council advises that the city attorney's office of Milwaukee reports that while exact figures are not available on the use of sec. 326.12, Stats., by defense attorneys, approximately one adverse examination of police officers is held each week. The city does not attempt to examine defendants adversely under sec. 326.12.

This finding of little use is not unexpected since in the usual case, as the learned trial judge pointed out, the defendant will know as much as or more about the offense than anyone else and the examination is without purpose. In addition, in those few cases where counsel unwisely abuse the privilege, the court, for good cause shown and where it is necessary to protect the witnesses from annoyance, embarrassment, or oppression, may in the exercise of its discretion order that the deposition not be taken or may be taken only under conditions that afford proper protection to the witnesses.

We hold, however, that the reason for suppression asserted by the city and principally relied upon by the trial judge, that the action was essentially criminal in nature, does not constitute "good cause" under the statute, and we further hold that the other grounds relied upon by the trial judge are not supported by facts in the record and, hence, the order constitutes an abuse of discretion.[13]

[13] The anomaly created by having a dual system of traffic regulation, one system under local civil laws, and the other under the state statutes, has long troubled law-enforcement officers, mu-

*By the Court.*—Order reversed, and cause remanded for further proceedings consistent with this opinion.

nicipal attorneys, and judges. For one possible approach, see Senate Bill 566 (1965) introduced at the request of the traffic committee of the board of county judges, and sponsored by the judicial council. Insofar as the bill is relevant to the problems of this opinion, it would provide that:

No pretrial adverse examination of either party will be allowed and, at the trial, the defendant may not be compelled to be a witness against himself and his failure to be a witness shall not be commented on by plaintiff.

There will be no pretrial discovery except for a very limited right of the defendant to inspect devices, such as drunkometers or radar equipment.

No double prosecution for the same act will be allowed even though it violates both the state forfeiture statute and the conforming local ordinance.