CITY OF CUDAHY, Appellant, v. DELUCA, Respondents.
[Two appeals.]

*Nos. 206, 207. Argued November 4, 1970.—Decided December 1, 1970.*
(Also reported in 181 N. W. 2d 374.)

For the appellant there was a brief by *Ray T. McCann,* and oral argument by *Richard A. McDermott,* both of Milwaukee.

For the respondents there was a brief by *Peregrine, Schimenz, Marcuvitz & Cameron* and *Hugh R. Braun,* all of Milwaukee, and oral argument by *Mr. Braun.*

WILKIE, J. Two issues are raised on this appeal:

1. Did the trial court err in holding that appellant must prove a violation of the ordinance here involved by clear, satisfactory and convincing evidence, rather than by the lesser general civil standard of a fair preponderance?

2. Did the trial court err in holding that the ordinance required a showing of knowledge on the part of respondents to sustain a finding of violation?

*Proper standard of proof—fair preponderance of evidence.*

It is well settled that in forfeiture actions for violation of municipal ordinances, where the violation involves an ordinance which has no statutory counterpart, the re-

quired burden of proof is that of other civil actions, a mere preponderance of the evidence. [1]

On the other hand, in those cases involving an ordinance which has a statutory counterpart, thereby making the conduct a criminal act under a parallel statute, the burden of proof is that of "clear, satisfactory, and convincing evidence" often referred to as "the middle burden of proof." [2]

Thus our specific inquiry must be to ascertain whether there is a statutory offense which parallels the "keeping of a disorderly house" charge made against the defendants.

Defendants in this case were originally charged with and found guilty of keeping a disorderly house in violation of the ordinance of the City of Cudahy. The Cudahy ordinance obviously distinguishes a "disorderly house" from a "house of ill fame or place for the practice of fornication." This court, in *Hawkins v. Lutton*, [3] when interpreting an ordinance which also distinguished a "disorderly house" from a "house of ill fame" or "place of prostitution" stated:

". . . The trial court held that a house could not be considered a disorderly house unless it was a house of ill fame, resorted to for the purpose of prostitution, assignation, fornication, gambling, etc., . . . The ordinance is clearly directed against disorderly houses and places, independent of the question whether they are houses of ill fame, or places resorted to for the purpose of prostitution, etc., or for the resort of persons of ill fame or ill name or dishonest conversation, or common prostitutes. A house the inmates of which behave so badly as to become a nuisance to the neighborhood is esteemed, at common law, a disorderly house, and so of

[1] *State v. Nergaard* (1905), 124 Wis. 414, 102 N. W. 899.
[2] *Neenah v. Alsteen* (1966), 30 Wis. 2d 596, 599, 142 N. W. 2d 232. *See generally, Madison v. Geier* (1965), 27 Wis. 2d 687, 691–693, 135 N. W. 2d 761.
[3] (1897), 95 Wis. 492, 70 N. W. 483.

one which is kept in such a way as to disturb or scandalize the public generally, or the inhabitants of a particular neighborhood, or the passers-by. . . . And it seems that a complaint for keeping such a house may be maintained by proof that only one person in the neighborhood or community was disturbed or annoyed, if the acts done were of such a nature as tended to annoy all good citizens." [4]

Hence, the premises may be a disorderly house without being a place of prostitution or gambling.[5]

There appears to be no statute dealing with the type of activity here involved. Nor is there a statute specifically dealing with "disorderly houses," as does the Cudahy city ordinance, with the possible exception of secs. 280.09 and 280.10, Stats.,[6] declaring premises "used for the purpose of lewdness, assignation or prostitution" to be nuisances and providing for the bringing of an action for abatement and the permanent enjoining of the scandalous activities therein. The statutes prohibit keeping a place of prostitution [7] or a gambling place,[8] and further provide penalties for those possessing obscene materials,[9] including motion pictures,[10] and for "perform[ing] in any lewd, obscene or indecent performance." [11] However, defendants were not charged with conduct which would also constitute a violation of any of these statutes, and the evidence presented clearly would not sustain such a charge.

We conclude, therefore, that since the specific conduct involved in this forfeiture action does not constitute a crime under the statutes in addition to a violation of an

[4] *Id.* at pages 497, 498.

[5] 27 C. J. S., *Disorderly House*, p. 540, sec. 1.

[6] The caption of sec. 280.10, Stats., reads: "Disorderly house, action for abatement."

[7] Sec. 944.34, Stats.

[8] Sec. 945.04, Stats.

[9] Sec. 944.21 (1) (a), Stats.

[10] Sec. 944.21 (1) (b), Stats.

[11] Sec. 944.21 (1) (d), Stats.

ordinance, the burden of proof properly required of the City of Cudahy in this case is the ordinary civil standard of the "preponderance of the evidence." To require, as did the trial court, that the City establish the violation by "the middle burden" of "clear, satisfactory, and convincing" evidence, was error.

*Knowledge required as necessary element—knowledge present here.*

We think that it is clear that Cudahy Ordinance 15.03 (1) (a) explicitly requires knowledge of the disorderly activities in order for a landlord or proprietor to be found guilty of keeping, maintaining or being connected with, or contributing to the support of a disorderly house. The language of the ordinance clearly provides that others connected with the disorderly house do not have to have knowledge of the disorderly activities in order to be convicted under that ordinance. The City of Cudahy council drew that distinction so that in relation to the two charges involved here there unquestionably was the requirement of knowledge.

Thus we conclude that the trial court properly required a showing of knowledge on the part of the defendants in order for them to be convicted under the ordinance. We conclude, however, that only because the trial court misapplied the burden of proof as requiring the City to prove the charges by the "middle burden of proof," did the trial court find an absence of knowledge here. The trial court said:

"What is of major concern to this court in this case is that it seems close to incredible that two intelligent, successful businessmen, such as the DeLuca brothers, could sit placidly at a bar for at least 15 minutes and be unaware that these goings on were taking place just a few feet away. It comes very perilously close to asking the court to be simple, to be naive, to be overly credible. However, under the evidence that is produced here, and

with the burden of proof being what it is, the court comes to this conclusion and orders that the action brought by the City of Cudahy be dismissed against the two defendants."

We think this is a finding of knowledge under the minimum standard of proof by a fair preponderance of the evidence. While it is entirely possible that the defendants had no advance knowledge of the activities planned by the group that rented a portion of their establishment, there is no question that the defendants had knowledge of the nature of the films being shown and of the dance performance put on by the go-go girls.

*By the Court.*—Judgments reversed with instructions to remand the causes for entry of judgment of conviction against the two defendants.

BEILFUSS and CONNOR T. HANSEN, JJ. (*concurring*). We see little or no valid reason to distinguish municipal ordinances that have statutory counterparts with those that do not so as to require different burdens of proof to establish a violation of the ordinance. The classification of forfeiture for a municipal ordinance is distinctive enough to require a uniform burden of proof.

The admonition of the dissent in *Madison v. Geier* (1965), 27 Wis. 2d 687, 701, 702, 135 N. W. 2d 761, is clearly demonstrated here:

"Henceforward it appears that there will be one burden of proof in forfeiture cases which involve crimes and a different burden of proof in those which do not involve crimes. Since there is no ready reference source to determine whether an ordinance involves a crime, we anticipate that this distinction will create uncertainty among litigants. Presumably counsel will have to scrutinize the statute book to determine whether the ordinance violation charged is set forth in the precise same terms as an enactment by the legislature."

Not only will the necessity of applying different burdens of proof dependent upon statutory counterparts

lead to confusion and error, it will, we believe, seem needlessly technical to the layman and those of the legal profession alike. Under the rule as adopted by the majority, a greater burden of proof must be met to obtain a conviction for some parking ordinances than it will to brand a man a keeper of a disorderly house under an ordinance like the one under consideration. This should not be required nor permitted.

We would adopt the middle burden of proof described in *Madison v. Geier, supra,* in all forfeiture cases based upon municipal ordinances.

In the present case the majority concludes that the defendants must have had knowledge of the events constituting disorderly conduct and that under the minimum burden of proof knowledge has been sufficiently proved. We agree with that opinion in that respect, but would take it one step further. We believe that under the middle burden of proof that knowledge was proved and the violation established.