CITY OF MILWAUKEE, Plaintiff-Respondent,

v.

Gwendolyn WILSON, Defendant-Appellant-Petitioner.

Supreme Court

*No. 77–670. Argued March 31, 1980.—Decided May 6, 1980.*

(Also reported in 291 N.W.2d 452.)

For the appellant-petitioner there was a brief by *Michael A. Campbell* and *Campbell & Sturm,* on behalf of Wisconsin Civil Liberties Union Foundation, Inc., of Milwaukee, and oral argument by *Michael A. Campbell.*

For the respondent the cause was argued by *Sandra S. Ruffalo,* assistant city attorney, with whom on the brief were *James B. Brennan,* city attorney, and *David A. Felger,* deputy city attorney.

BEILFUSS, C.J. The defendant-appellant, Gwendolyn Wilson, was found guilty in Milwaukee county court of loitering with intent to solicit for prostitution contrary to sec. 106.31(1) (g) of the Municipal Code for the City of Milwaukee. An appeal was taken to the circuit court for Milwaukee county and the judgment was affirmed. A second appeal was taken to the court of appeals, and again the judgment was affirmed.

We granted defendant's petition for review because of the importance of the constitutional issues raised and the need for clarification in this difficult area of law. For the reasons set forth below, we also affirm.

The ordinance which defendant was found to have violated reads as follows:

"SECTION 106.31.   LOITERING OR PROWLING.  (1) Whoever does any of the following within the limits of the city of Milwaukee may be fined not more than five hundred ($500) or upon default of payment thereof, shall be imprisoned in the house of correction of Milwaukee county for not more than 90 days:

"(g)  To loiter in or near any throughfare (sic) or place open to the public in a manner and under circumstances manifesting the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution.   Among the circumstances which may be considered in determining whether such purpose is manifested: that such person is a known prostitute or panderer, repeatedly beckons to, stops or attempts to stop, or engages male or female passersby in conversation, or repeatedly stops or attempts to stop motor vehicle operators by hailing, waiving of arms or any other bodily gesture.  The violator's conduct must be such as to demonstrate a specific intent to induce, entice, solicit or procure another to commit an act of prostitution.  No arrest shall be made for a violation of this subsection unless the arresting officer first affords such persons an opportunity to explain such conduct, and no one shall be convicted of violating this subsection if it appears at trial that the explanation given was true and disclosed a lawful purpose.  As used in this subsection:

"1.  'Public place' is an area generally visible to public view and includes streets, sidewalks, bridges, alleys, plazas, parks, driveways, parking lots, automobiles (whether moving or not), and buildings open to the general public including those which serve food or drink, or provide entertainment, and the doorways and entrances to buildings of dwellings and the grounds enclosing them;

"2.  'Known prostitute or panderer' means a person who within one year previous to the date of arrest for violation of this section, has within the knowledge of the arresting officer been convicted in Milwaukee County or Circuit Court of an offense involving prostitution."

Prior to trial the defendant moved to dismiss the complaint against her on the grounds that sec. 106.31(1)

(g) was unconstitutionally vague and overbroad. The motion was denied and the case was tried to the court.

At trial the city presented the testimony of two undercover police officers. Both testified that on April 16, 1976, between 1:55 and 2:30 a.m., they observed the defendant at the intersection of North 5th Street and West Wisconsin Avenue in the city of Milwaukee. They stated that during the period in which they were observing her, the defendant stopped several male pedestrians on the sidewalk and appeared to engage them in brief conversations. She also appeared to exchange words with the male drivers of two automobiles which had pulled over and parked next to the curb.

The officers testified that in each instance it was the defendant who initiated the contact with the pedestrians by walking up to them as they were passing by. They also stated that at least one of the automobiles pulled up to the curb only after the defendant had beckoned to it. Each encounter lasted approximately one or two minutes, but neither of the officers was able to testify as to what, if anything, was said by the defendant. When one of the officers approached the defendant and asked what she was doing in the area, she simply looked at him and laughed. It was at this point that she was arrested.

The officers also testified at trial that they knew the defendant because she had previously been arrested for prostitution and loitering. In addition, one of the officers stated that the area in which they observed the defendant was known to have a high concentration of prostitutes.

Following its presentation of the above-summarized testimony, the city rested. The defendant presented no evidence of her own, but moved for dismissal on the ground that the evidence was insufficient to sustain a finding that she had violated sec. 106.31(1)(g).

The trial court denied defendant's motion and found her guilty of loitering in violation of the ordinance. Defendant was ordered to pay a fine of $200.

The principal issues presented on this review are:

(1) Is Milwaukee Ordinance sec. 106.31(1)(g) unconstitutionally vague and overbroad?

(2) Was the evidence adduced at trial sufficient to sustain the trial court's finding that the defendant had violated Milwaukee Ordinance sec. 106.31(1)(g)?

We hold that Milwaukee Ordinance sec. 106.31(1)(g) represents a constitutionally permissible exercise of the city's police power and that the evidence presented at trial was sufficient to support the trial court's finding of guilt.

Defendant's primary challenge in this case is to the constitutionality of the ordinance she was found to have violated. She claims that the city's ordinance is unconstitutional because it is both vague and overbroad.

A statute or ordinance is unconstitutionally vague if it fails to afford proper notice of the conduct it seeks to proscribe or if it encourages arbitrary and erratic arrests and convictions.[1] The test to determine vagueness is whether the statute or ordinance is so obscure that men of ordinary intelligence must necessarily guess as to its meaning and differ as to its applicability.[2] In order to withstand a vagueness challenge, it is not necessary for a law to attain the precision of mathematics or science, but it must be sufficiently definite so that potential offenders who wish to abide by the law are able to discern when the region of proscribed conduct is neared and those who are charged either with enforcing or applying it are not relegated to creating their own standards of culpability instead of applying the standards prescribed in the law.[3]

---

[1] *Papachristou v. City of Jacksonville,* 405 U.S. 156, 162 (1972); *State v. Starks,* 51 Wis.2d 256, 262, 186 N.W.2d 245 (1971).

[2] *State v. Zwicker,* 41 Wis.2d 497, 507, 164 N.W.2d 512 (1969).

[3] *State v. Courtney,* 74 Wis.2d 705, 711, 247 N.W.2d 714 (1976).

In *State v. Starks, supra,* this court struck down as vague and overbroad a general vagrancy statute which defined vagrant to mean:

"A person found in or loitering near any structure, vehicle or private grounds who is there without the consent of the owner and is unable to account for his presence; . . ."

The court carefully reviewed decisions from other jurisdictions which had passed on the constitutionality of similar statutes and concluded that statutory prohibitions against loitering were impermissibly vague unless the term "loitering" was limited as to scope, place or purpose. The use of the term "loitering" without such restrictions, we said, "renders the statute vague as it fails to provide fair notice of the proscribed conduct, it classifies innocent conduct as criminal, and it is susceptible to arbitrary law enforcement." *State v. Starks, supra,* 51 Wis.2d at 262.

The defendant contends that sec. 106.31(1)(g) of the ordinance suffers from the same defect as the vagrancy statute challenged in *Starks.* She argues that the city has not limited its prohibition of loitering to those areas it has an interest in protecting and, further, that the city's attempt to limit the prohibited loitering to conduct which manifests a particular criminal purpose fails to create a definite realm of illegal conduct. Thus, she argues, the city's ordinance fails to provide the degree of certainty required by the state and federal constitutions.

The conduct which sec. 106.31(1)(g) seeks to proscribe is described as loitering in a manner and under circumstances which manifest the purpose of inducing, enticing, soliciting or procuring another to commit an act of prostitution. The ordinance lists several circumstances which may be considered in determining whether the required purpose is manifested. It expressly states: "The violator's conduct must be such as to demonstrate

a specific intent to induce, entice, solicit or procure another to commit an act of prostitution."

Although the city's prohibition of loitering is not restricted to certain specified areas, it is only a limited kind of loitering that is prohibited. The ordinance is directed only to loitering in a manner and under such circumstances that manifest an intent to induce, entice, solicit or procure another to commit an act of prostitution. This language sufficiently defines the conduct which the city seeks to proscribe such as that one inclined to obey the ordinance would be able to understand what is and is not allowed. The requirement that there be overt conduct which manifests an unlawful purpose accompanied by a specific intent to accomplish that purpose insures that the ordinance cannot properly be applied to innocent activity such that it could become merely a "convenient tool for 'harsh and discriminatory enforcement by local prosecuting officials, against particular groups deemed to merit their displeasure.' " *Papachristou v. City of Jacksonville, supra,* at 170, quoting *Thornhill v. Alabama,* 310 U.S. 88, 97–98 (1940).

Defendant's contention that the city must limit its proscription of loitering to specific areas which it has an interest in protecting from general access is based upon a too narrow reading of our decision in *State v. Starks, supra.* We emphasized in that case that unlike other vagrancy laws which had been upheld against vagueness attacks, Wisconsin's did not name with specificity and particularity the locations where loitering may not occur. However, we did not say that designating certain places where loitering may not occur was the only way in which anti-loitering laws could be made sufficiently definite to withstand constitutional attack. On the contrary, we indicated quite clearly in *Starks* that it was the failure of the statute there at issue "to meet the specificity requirements as to scope, place *or purpose*" which rendered

it unconstitutionally vague. *Id.*, 51 Wis.2d at 262 (Emphasis added.)

Here the city has met the specificity requirements recognized in *State v. Starks, supra,* by prohibiting loitering only when it is in such a manner and under such circumstances as to manifest a particular unlawful purpose. Having limited its prohibition to loitering for a specific unlawful purpose, the city is not required to further limit its prohibition of that specific kind of loitering to only certain areas. The societal harms that result from prostitution are not restricted to any one area and, therefore, the city's prohibition of conduct intended to induce prostitution need not be so limited.

The defendant also contends that Milwaukee Ordinance sec. 106.31(1)(g) is unconstitutionally overbroad because it includes within its proscription constitutionally protected activity.

A statute or ordinance is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to conduct which the state is not permitted to regulate.[4]

In order to assert a claim of constitutional overbreadth, it is not necessary that the defendant's own conduct be constitutionally protected. The overbreadth doctrine is an exception to the general rule that "a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973).

The rationale for this exception to the general rule has been stated by the United States Supreme Court as follows:

---

[4] *State v. Tronca,* 84 Wis.2d 68, 89, 267 N.W.2d 216 (1978).

". . . An overbroad statute might serve to chill protected speech. First Amendment interests are fragile interests, and a person who contemplates protected activity might be discouraged by the *in terrorem* effect of the statute. See *NAACP v. Bulton,* 371 U.S. 415, 433 (1963). Indeed such a person might choose not to speak because of uncertainty whether his claim of privilege would prevail if challenged. The use of overbreadth analysis reflects the conclusion that the possible harm to society from allowing unprotected speech to go unpunished is outweighed by the possibility that protected speech will be muted." *Bates v. State Bar of Arizona,* 433 U.S. 350, 380 (1977).

Thus, if the challenged ordinance includes within its prohibition conduct which is constitutionally protected, it is void, even though the defendant's own conduct is unprotected and may properly be prohibited by a more narrowly drawn law.

The defendant contends that Milwaukee Ordinance sec. 106.31(1)(g) is overbroad because it prohibits not only conduct which has as its purpose the solicitation of acts of prostitution, but also constitutionally protected activity which only appears to have such a purpose. She argues, for example, that a woman engaged in political canvassing would come within the terms of the ordinance if she repeatedly beckoned to and stopped pedestrians for political purposes. Such conduct, she contends, could manifest to an observing police officer an intent to solicit for prostitution and therefore subject a person to arrest and fine for the exercise of her constitutional rights.

In pressing this argument, however, the defendant fails to take into consideration the requirement that a specific intent to accomplish the unlawful purpose manifested must be shown. Conduct which merely appears to have as its purpose solicitation for prostitution does not constitute a violation of the ordinance. There must

also be demonstrated a specific intent to induce, entice, solicit or procure another to commit an act of prostitution. Because of the added element of intent, one engaged in constitutionally protected activity could not properly be found guilty of a violation.

This is not to say that a person involved in constitutionally protected activity or other innocent conduct could not be arrested or charged under the city's ordinance. It is certainly conceivable that a police officer could mistakenly, or even willfully, arrest for loitering with intent to solicit for prostitution a person whose conduct was entirely innocent. But this would not be a proper application of the ordinance, and the fact that a law may be improperly applied or even abused does not render it constitutionally invalid.

Lastly, we reach the question of whether the evidence adduced at trial is sufficient to sustain the trial court's finding that the defendant violated Milwaukee Ordinance sec. 106.31(1)(g).

The test for determining sufficiency of the evidence is whether a reasonable trier of fact could be convinced of the defendant's guilt to the required degree of certitude by the evidence which it had a right to believe and accept as true.[5] It is not a question of whether this court is so convinced. Our task as a reviewing court is limited to determining whether the evidence presented could have convinced a trier of fact, acting reasonably, that the appropriate burden of proof had been met.

As to what is the appropriate burden of proof, the general rule in civil forfeiture cases is that the defendant's guilt need be shown by only a mere preponderance of the evidence.[6] However, in forfeiture actions which

---

[5] *Lock v. State*, 31 Wis.2d 110, 114–15, 142 N.W.2d 183 (1966).

[6] *Cudahy v. DeLuca*, 49 Wis.2d 90, 92–93, 181 N.W.2d 374 (1970).

involve or are closely associated with acts of a criminal nature, a higher standard is required. Municipal ordinance violations involving acts which are also made criminal by statute must be proved by clear, satisfactory and convincing evidence.[7]

In this case the trial court stated that the lower burden of a preponderance of the evidence was the proper one to be applied, but concluded that even under the beyond-a-reasonable-doubt standard, the evidence was sufficient to prove the defendant's guilt. The court of appeals agreed that the preponderance-of-the-evidence standard was the appropriate one and affirmed on that basis.

We conclude, because of the criminal nature of the conduct which the Milwaukee ordinance proscribes and the close similarity between that ordinance and secs. 947.02(3),[8] and 944.32[9] Stats., that the city was required to establish the defendant's guilt by clear, satisfactory and convincing evidence. The interests of a person alleged to have violated such an ordinance require greater protection than is afforded by requiring merely a preponderance of the evidence for a finding of guilt.

However, we reject defendant's contention that under the United States Supreme Court's decision in *In re Winship,* 397 U.S. 358 (1970), a violation must be estab-

---

[7] *Madison v. Geier,* 27 Wis.2d 687, 693, 135 N.W.2d 761 (1965).

[8] "947.02 **Vagrancy.** Any of the following are vagrants and are guilty of a Class C misdemeanor:

". . .

"(*3*) A prostitute who loiters on the streets or in a place where intoxicating liquors are sold, or a person who, in public, solicits another to commit a crime against sexual morality; or

". . ."

[9] "944.32 **Soliciting prostitutes.** Whoever intentionally solicits or causes any person to practice prostitution or establishes any person in a place of prostitution is guilty of a Class D felony. If the person is under the age of 18, the defendant is guilty of a Class C felony.

lished by proof beyond a reasonable doubt. *In re Winship, supra,* involved the burden of proof to be used at the adjudicatory stage of a juvenile delinquency proceeding. A finding of delinquency at such a proceeding, just as a conviction for a crime, could result in a complete loss of liberty. For this reason the Supreme Court concluded that due process required proof of the offense charged beyond a reasonable doubt.

A violation of the municipal ordinance, on the other hand, is punishable only by fine and not by deprivation of one's liberty except upon unwarranted refusal to pay the fine. Although the individual interests at stake in being found guilty of violating an ordinance such as Milwaukee's are substantial, they are not, in our view, sufficient to require proof of a violation beyond all reasonable doubt. We therefore hold that the city was required to prove its case by clear, satisfactory and convincing evidence.

Viewing the evidence adduced at trial in light of this standard, we conclude that it is sufficient to sustain the trial court's finding that the defendant violated Milwaukee Ordinance sec. 106.31(1)(g).

The defendant was observed on a street corner between 1:55 and 2:30 in the morning in an area known to have a high rate of prostitution, stopping male pedestrians as they were walking by. She appeared to converse briefly with each of the men she stopped and also with the male drivers of two automoblies, one of which pulled over to the curb only after the defendant was seen beckoning to it. When confronted by a police officer and asked what she was doing, the defendant simply laughed.

While we do not express the trial court's confidence that this evidence would support a conviction under the higher reasonable doubt standard, we are unable to say that no trier of fact, acting reasonably, could find it to

be clear, satisfactory and convincing of defendant's guilt. Because that is the test, the judgment must be affirmed.

*By the Court.*—The decision of the court of appeals affirming the judgment of the trial court is affirmed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I do not think that a trier of fact, acting reasonably, could find the evidence to be clear, satisfactory and convincing of defendants' guilt. Although the officers testified they knew the defendant because she had been arrested for loitering and prostitution, her criminal record was not introduced into evidence, and there is no evidence in the record that the defendant was a known prostitute as this term is used in the ordinance. The officers testified that the defendant beckoned one car and that the defendant's contact with male pedestrians was initiated when the defendant "walked towards them and they'd stop". The officers were not able to testify that it was the defendant who "repeatedly beckoned" the men, rather than vice versa. The officers were not able to testify as to what ensued between the defendant and the men who stopped. If the defendant was loitering for purposes of prostitution, I believe that the city unfortunately failed to prove its case as required under the ordinance. I would reverse.