STATE, Respondent, v. ZWICKER, Appellant.*
STATE, Respondent, v. WEILAND, Appellant.
STATE, Respondent, v. OBERDORFER, Appellant.*
STATE, Respondent, v. SIMONS, Appellant.
STATE, Respondent, v. SIROTOF, Appellant.*

*Nos. State 73, 77, 78, 79, 80. Argued September 9, 1968.—Decided February 13, 1969.*
(Also reported in 164 N. W. 2d 512.)

* Motion for rehearing denied, without costs, on April 1, 1969.

498

500

502

For the appellants there were briefs by *Percy L. Julian, Jr.*, and *Marc Stickgold*, both of Madison, and oral argument by *Mr. Julian*.

For the respondent the cause was argued by *Sverre O. Tinglum*, assistant attorney general, with whom on the brief were *Bronson C. La Follette*, attorney general, *William A. Platz*, assistant attorney general, and *James C. Boll*, district attorney of Dane county.

CONNOR T. HANSEN, J.

*The February 21, 1967, Demonstration (Zwicker).*

The appellant Zwicker was arrested at this demonstration. It was preceded by a meeting on February 17, 1967, in the office of the Dean of Student Affairs, at which the Dean, the Chief of University Protection and Security, Ralph Hanson, and others were present. Those present agreed upon certain rules for the anticipated

demonstration on February 21, 1967, including a rule that demonstrators were not to be allowed to take signs into campus buildings.

The rule was made by persons having authority to make rules respecting the use of university buildings for student activities.

On the morning of February 21, 1967, Chief Hanson specifically advised the defendant and others assembled of the rule against taking signs into campus buildings. The demonstrators, including the defendant, were informed of this rule on two occasions before they entered the building. A group estimated at 60 to 70 persons, and including Zwicker, then entered the building in apparent compliance with the rule against carrying or displaying signs. They took up positions in a corridor adjacent to the room where the interviews were to be conducted.

Approximately ten or fifteen minutes later, signs appeared in the hands of the demonstrators and they were again advised that signs were not permitted.

Following the arrest of another demonstrator and the confiscation of a number of signs, the demonstration continued in an orderly fashion until defendant raised a sign over his head and allegedly told other demonstrators to raise their signs. Defendant refused to surrender or put down the sign when told to do so.

He was then arrested and when officers attempted to remove him from the building, he "went limp" and other demonstrators physically prevented his removal. Thereafter, 40 to 50 other signs appeared, but the police officers made no further arrests or attempts to enforce the rule because, as one officer testified, it had become "impossible to control the situation." Later that day, a warrant was issued for defendant's arrest on charges of disorderly conduct. He was served with the warrant on February 23, 1967.

*The October 18, 1967, Demonstration*
*(Weiland, Oberdorfer, Simons and Sorotof).*

During the morning of October 18, 1967, a group of approximately 200 persons entered a university building and took positions in a corridor adjacent to rooms in which the chemical manufacturer was to interview persons seeking employment. The presence of the group filled the corridor making passage difficult. They sat on the floor of the corridor, and there was testimony that they were "packed just as tight as they could be," taking up all available space. There is also testimony that persons attempting to pass through the corridor had to walk over the seated demonstrators.

Later in the morning, three demonstrators were arrested when they refused to move. They could not be physically removed as other demonstrators held onto those arrested.

Chief Hanson then called the city of Madison police department for assistance. Chief Hanson also testified that on three different occasions between one and 1:30 p. m. he informed the demonstrators that their assembly was unlawful and ordered them to disperse.

The order to disperse was not obeyed and at approximately 1:30 p. m. a combined force of university and city police forcibly removed them.

Testimony was given at the defendants' joint trial showing that defendants, during the demonstration, conducted themselves as follows:

*Robert Weiland.*

He blocked the door to the business office by maintaining a sitting position and joining arms with two other demonstrators. He refused to move when asked to do so

by the chief and he could not be removed as other demonstrators held onto him.

There is also testimony that he attempted to strike an officer but missed because other demonstrators restrained him.

*Michael Oberdorfer.*

He struck out at officers who were attempting to move the demonstrators away from the building and spat at an officer several times. He called the officers "f - - - ing cops," "bastards," "swine," "fascist," "Nazi storm trooper," and "a dirty, rotten c - - k-s - - - er."

. . *William Simons.*

There is testimony that he used a bullhorn amplifier in the building to lead the demonstrators in chants and yells; advised them to allow no one to enter or leave an adjacent room; and advised them to "shove the cops out," to "lock their arms and legs together," and "to kick policemen between the legs."

There is also testimony that he advised fellow demonstrators to block an entrance to a corridor, attempted to bar a student from entering the building by blocking him physically, and used the following language: "Cops are fascist pigs and bastards," "Kauffman is a bastard," "Bronson Laf - - - er," "f - - - 'em" and "f - - - the University."

Assistant Dean of Student Affairs, Cipperly, who was present during the entire demonstration, testified that he did not hear Simons use any vulgarity and that Simons helped in the attempt to keep the passageways clear and had a calming effect on the rest of the demonstrators.

*Gregor Sirotof.*

There is testimony that when Sirotof learned the police were going to clear the building he said "If they come in, kick them right in the b - - - -, right between the legs." There is testimony that in a loud voice he called the officers "f - - - ing, fascist pigs," and that when an officer allegedly attempted to take hold of his shoulder he threatened to kill the officer and then spat upon him.

The transcript of Zwicker's trial, in which he was a codefendant with another person, exceeds 450 pages and in the other cases 725 pages. Suffice it to say, that all of the conduct of the appellants set forth occurred within the view and hearing of the other demonstrators. In the Weiland, Oberdorfer, Simons and Sirotof cases the crowding of the passageways and the noise generated by the demonstration prevented students from reaching their classrooms and disrupted class activity to the extent that at least one class had to disband. All traffic to and from a dean's office was blocked and the demonstration upset the routine carried on in the building.

In seeking reversal of their convictions of disorderly conduct under sec. 947.01, Stats., appellants contend that: (1) The statute is so vague and overly broad as to deprive them of due process of law under the fourteenth amendment to the United States Constitution; (2) the statute is unconstitutional as applied to their conduct; (3) the trial courts erred in instructing the jury; (4) the trial court erred in *State v. Zwicker* when it failed to afford the defendant service of subpoenas at state expense; (5) the trial court abused its discretion in denying appellants' motion for severance of trial; (6) there was not sufficient credible evidence to support the verdicts. We have given consideration to all the issues raised by the defendants.

(1)  *Vagueness and Overbreadth.*

Appellants contend that the language of sec. 947.01, Stats., is so vague and overly broad that the defendants were deprived of due process of law as afforded them under the fourteenth amendment to the United States Constitution.

The distinction between a challenge of vagueness and a challenge of overbreadth is well stated in *Landry v. Daley* (D. C. Ill. 1968), 280 Fed. Supp. 938, 951.

"The concept of vagueness or indefiniteness rests on the constitutional principle that procedural due process requires fair notice and proper standards for adjudication. The primary issues involved are whether the provisions of a penal statute are sufficiently definite to give reasonable notice of the prohibited conduct to those who wish to avoid its penalties and to apprise judge and jury of standards for the determination of guilt. If the statute is so obscure that men of common intelligence must necessarily guess at its meaning and differ as to its applicability, it is unconstitutional.

"The concept of overbreadth, on the other hand, rests on the principles of substantive due process which forbid the prohibition of certain individual freedoms. The primary issue is not reasonable notice or adequate standards, although these issues may be involved. Rather the issue is whether the language of the statute, given its normal meaning, is so broad that its sanctions may apply to conduct protected by the Constitution. . . ."

(a)  Vagueness.

This statute has previously been challenged for vagueness. In *State v. Givens* (1965), 28 Wis. 2d 109, 135 N. W. 2d 780, we determined that the statute sufficiently identified the type of behavior which the legislature intended to be contrary to law and that the statute was not subject to an attack for vagueness. Appellants present no

convincing arguments or authorities which would indicate that the holding in *Givens* should not continue to prevail.

It seems obvious that the great and varied number of offenses which come within the category of disorderly conduct defy precise definition in a statute. "Impossible standards of specificity are not required." *Jordan v. De George* (1951), 341 U. S. 223, 231, 71 Sup. Ct. 703, 95 L. Ed. 886, rehearing denied, 341 U. S. 956, 71 Sup. Ct. 1011, 95 L. Ed. 1377.

Wisconsin's disorderly conduct statute proscribes conduct in terms of results which can reasonably be expected therefrom, rather than attempting to enumerate the limitless number of antisocial acts which a person could engage in that would menace, disrupt or destroy public order. The statute does not imply that all conduct which tends to annoy another is disorderly conduct. Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. The statute does not punish a person for conduct which might possibly offend some hypercritical individual. The design of the disorderly conduct statute is to proscribe substantial intrusions which offend the normal sensibilities of average persons or which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons.

In addition to our ruling in *Givens,* the United States Supreme Court has passed on the constitutionality of the Wisconsin disorderly conduct statute. *Zwicker v. Boll* (1968), 391 U. S. 353, 88 Sup. Ct. 1666, 20 L. Ed. 2d 642. We are of the opinion that in affirming *Zwicker v. Boll,* the United States Supreme Court made a determination that the Wisconsin statute was not vague.

(b) Overbreadth.

The appellants also contend that sec. 947.01, Stats., is unconstitutional on its face because it is overly broad and

therefore may be applied to conduct protected by the first amendment to the United States Constitution. Our attention has been directed to *N. A. A. C. P. v. Button* (1963), 371 U. S. 415, 83 Sup. Ct. 328, 9 L. Ed. 2d 405; *Dombrowski v. Pfister* (1965), 380 U. S. 479, 85 Sup. Ct. 1116, 14 L. Ed. 2d 22, and a rather substantial number of other cases, all of which have been considered.

We are of the opinion that the statute under consideration is not overly broad. We are cognizant of the fact that the statute must be viewed with the consideration of whether it could be possibly applied so as to offend the constitutional requirement that a governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms. *Zwickler v. Koota* (1967), 389 U. S. 241, 88 Sup. Ct. 391, 19 L. Ed. 2d 444.

The language of the disorderly conduct statute is not so broad that its sanctions may apply to conduct protected by the constitution. The mere propounding of unpopular views will not qualify for conviction. The statute does not proscribe activities intertwined with protected freedoms unless carried out in a manner which is violent, abusive, indecent, profane, boisterous or unreasonably loud, or conduct similar thereto, *and* under circumstances in which such conduct tends to cause or provoke a disturbance. Prohibition of conduct which has this effect does not abridge constitutional liberty.

Constitutionally protected rights, such as freedom of speech and peaceable assembly, are not the be all and end all. They are not an absolute touchstone. The United States Constitution is not unmindful of other equally important interests such as public order. To recognize the rights of freedom of speech and peaceable assembly as absolutes would be to recognize the rule of force; the rights of other individuals and of the public would vanish.

Certain activities are outside the protection of the first and fourteenth amendments and "general regulatory statutes, not intended to control the content of speech but incidentally limiting its unfettered exercise" are permissible "when they have been found justified by subordinating valid governmental interests." *Konigsberg v. State Bar of California* (1961), 366 U. S. 36, 50, 81 Sup. Ct. 997, 6 L. Ed. 2d 105, 116.

As stated in *Chaplinsky v. New Hampshire* (1942), 315 U. S. 568, 571, 62 Sup. Ct. 766, 86 L. Ed. 1031:

"Allowing the broadest scope to the language and purpose of the Fourteenth Amendment, it is well understood that the right of free speech is not absolute at all times and under all circumstances."

And as stated in *Cantwell v. Connecticut* (1940), 310 U. S. 296, 308, 60 Sup. Ct. 900, 84 L. Ed. 1213:

"No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot . . . . When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the state to prevent or punish is obvious."

Again, in *Chaplinsky, supra,* at 571:

"There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, and libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace. It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality."

We are further of the opinion that the United States Supreme Court in *Zwicker v. Boll, supra,* determined that the Wisconsin statute was not overly broad. We recognize that appellants urge that the ruling in *Zwicker v. Boll* was not correctly analyzed and applied by the United States District Court in *Soglin v. Kauffman* (D. C. Wis. 1968), 286 Fed. Supp. 851. However, we believe that *Soglin* does correctly interpret the ruling in *Zwicker*. In affirming *Zwicker,* the United States Supreme Court deemed it sufficient to cite only *Cameron v. Johnson* (1968), 390 U. S. 611, 88 Sup. Ct. 1335, 20 L. Ed. 2d 182, rehearing denied, 391 U. S. 971, 88 Sup. Ct. 2029, 20 L. Ed. 2d 887.

The *Soglin* court states at page 855:

"(3) In affirming *Zwicker,* per curiam, the Supreme Court considered it sufficient to cite only *Cameron.* In *Cameron* the Supreme Court affirmed a judgment of dismissal squarely and expressly on the basis that the statute under attack was not vague and was not overbroad; that it was 'a valid law dealing with conduct subject to regulation so as to vindicate important interests of society and . . . the fact that free speech is intermingled with such conduct does not bring it within constitutional protection.' There is no hint in *Cameron* that the decision on vagueness and overbreadth depended on the fact that state prosecutions were already pending."

We, therefore, conclude that sec. 947.01, Stats., is not subject to an attack for overbreadth.

(2) *The disorderly conduct statute as applied to the appellants.*

The appellants assert that sec. 947.01 (1), Stats., as applied to their conduct violated their first amendment rights to freedom of speech and peaceable assembly.

Some of the evidence relating to the conduct of each of the defendants has heretofore been set forth. It would serve no useful purpose to repeat it.

It is contended that Zwicker "was convicted for nothing more than peacefully holding a sign in a public building." The record does not support such a statement. Zwicker knew of the rule against displaying signs in the building during the demonstration. In deliberate defiance of the rule he raised a sign over his head, and there is evidence that he told other demonstrators that they should display signs. He was heard to say, "Are we going to let the University administration tell us how to run a protest?" Later, when arrested, he "went limp" and the officers took no further action at that time because in the judgment of Chief Hanson it "was a pretty tense moment and a pretty difficult thing for us to accomplish the actual manual arrest of Zwicker without actually having to hurt somebody."

Picketing and parading is conduct "subject to regulation even though intertwined with expression and association." *Cox v. Louisiana* (1965), 379 U. S. 559, 563, 85 Sup. Ct. 476, 13 L. Ed. 2d 487, rehearing denied, 380 U. S. 926, 85 Sup. Ct. 879, 13 L. Ed. 2d 814.

As to the other defendants, we find no basis for the contention that their conduct and speech under the circumstances of this case is protected by the first amendment.

In *Cox v. Louisiana* (1965), 379 U. S. 536, 555, 85 Sup. Ct. 453, 13 L. Ed. 2d 471, the United States Supreme Court stated:

"A group of demonstrators could not insist upon the right to cordon off a street, or entrance to a public or private building, and allow no one to pass who did not agree to listen to their exhortations. . . ."

The fact that the conduct of these defendants took place during a demonstration does not give their speech

and actions any special standing under the first amendment.

"It rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute. We reject the contention now. . . ." *Giboney v. Empire Storage Co.* (1949), 336 U. S. 490, 498, 69 Sup. Ct. 684, 93 L. Ed. 834.

The acts for which the defendants were convicted were beyond the protection of the constitution, and sec. 947.01 (1), Stats., was properly applied to their conduct. It cannot be said that there has been any abridgment of the rights of the defendants under the first or fourteenth amendments.

### (3) *Jury instructions.*

The appellants urge that the instructions to the jury in both cases (Zwicker; and Weiland, Simons, Oberdorfer and Sirotof) were erroneous and the cause of the respective defendants thereby prejudiced.

We have examined and considered the instructions given by the two trial judges and we are satisfied that under the facts of these particular cases the instructions as given are not subject to an attack because of prejudicial error.

Our attention has been directed to *Terminiello v. Chicago* (1949), 337 U. S. 1, 4, 69 Sup. Ct. 894, 93 L. Ed. 1131, rehearing denied, 337 U. S. 934, 69 Sup Ct. 1490, 93 L. Ed. 1740, wherein the United States Supreme Court held that the instructions to the jury were "as binding on us as though the precise words had been written into the ordinance."

However, the cases here under consideration are distinguishable from *Terminiello*. There the court did not

pass upon the substantive issues but found error in the trial court's instructions to the jury. The trial court instructed the jury that "breach of the peace" included speech which "stirs the public to anger, invites dispute, brings about a condition of unrest, or creates a disturbance, or if it molests the inhabitants in the enjoyment of peace and quiet by arousing alarm." The United States Supreme Court held that the statute, so construed, "permitted conviction of petitioner if his speech stirred people to anger, invited public dispute, or brought about a condition of unrest. A conviction resting on any of those grounds may not stand." *Terminiello, supra,* at page 5.

Here, the trial courts properly instructed the juries that under the facts of these cases, the charge of disorderly conduct consisted of two elements. The first element being that the defendants engaged in disorderly conduct, and the second element being that such conduct tended to cause or provoke a disturbance.

As to the first element the court charged the jury that disorderly conduct included language and that "the general phrase 'disorderly conduct' means conduct having a tendency to disrupt good order and provoke a disturbance. It includes all such acts and conduct as are of a nature to corrupt the public morals or to outrage the sense of public decency, whether committed by words or acts. Conduct is disorderly, although it may not be boisterous or unreasonably loud, if it is of a type which tends to disrupt good order and provoke a disturbance."

As to the second element, the court instructed the jury: "The second element of this offense requires that the conduct engaged in, under the circumstances as they then existed, did tend to cause or provoke a disturbance. It is not necessary that an actual disturbance must have resulted from the conduct. The law requires only that the conduct be of a type which tends to cause or provoke a disturbance under the circumstances as they then

existed. . . . This element requires that the conduct of the defendant under the circumstances as they then existed tended to cause or provoke a disturbance."

Though under the facts of this case the instructions sufficiently apprised the jury of the nature of the term "disorderly conduct," we believe that such instructions could be even more articulate in emphasizing that there are two distinct elements to disorderly conduct—conduct must be of the type enumerated in the statute or similar thereto *and* such conduct must be engaged in under circumstances which tended to cause or provoke a disturbance. *Givens, supra.*

We are of the opinion that *Givens* means that the words "conduct of a type not previously enumerated but similar thereto" are used to add to the six words specifically enumerated (violent, abusive, indecent, profane, boisterous, unreasonably loud). This requires that a person's conduct must consist of one of the six enumerated words or conduct similar thereto *and* such conduct tends to cause or provoke a disturbance. Thus, not every participant in an otherwise peaceful demonstration is subject to conviction; only those whose conduct embraces *both* elements of the disorderly conduct statute.

In the Weiland, Simons, Oberdorfer and Sirotof cases the trial court gave some further instructions relating to the first amendment and the appellants state that in doing so it "blundered."

We conclude that the instructions so given were a reasonable statement of *Cox v. Louisiana,* 379 U. S. 536, *supra,* page 554, which stated:

". . . The rights of free speech and assembly, while fundamental in our democratic society, still do not mean that everyone with opinions or beliefs to express may address a group at any public place and at any time. The constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in the excesses of anarchy. . . ."

The defendants submitted certain requested instructions to the trial courts. We conclude that the trial courts did not abuse their discretion in failing to give the instructions requested.

### (4) *Service of subpoena.*

Under the facts of the Zwicker case, we are of the opinion that the trial court did not err and Zwicker was not denied equal protection of the law when the trial court refused to order the service of subpoenas for the defendant at state expense. In considering this issue we are assuming the defendant was indigent.

The defendant was charged with a misdemeanor and upon conviction the maximum penalty would be a fine of not more than $100 or imprisonment for not more than thirty days.

There has been absolutely no showing that the defendant was in any way denied a fair trial as a result of the trial court's refusal to grant defendant's motion for service of subpoenas at state expense. The defendant did in fact call six witnesses in his defense and the record is barren of any showing that the trial court's ruling prevented the defendant from securing the attendance of any witness at his trial.

The appellant contends that the service of subpoenas at state's expense is a logical extension of *Griffin v. Illinois* (1956), 351 U. S. 12, 76 Sup. Ct. 585, 100 L. Ed. 891. We think not. The Illinois appeal procedure, as in most states, required a transcript of the trial court proceedings. The United States Supreme Court held that the equal protection clause of the United States Constitution compelled the state to furnish a state-paid transcript of his criminal trial (a felony case) to a convicted indigent defendant who needed the transcript for appeal purposes. To hold otherwise would effectively deny the defendant of a full appellate review.

The defendant in this case was not denied a fair trial or an appeal. On the record before us, it cannot be said that the defendant was denied equal protection of the laws.

## (5) *Motions for severance.*

We are of the opinion that neither of the trial judges abused his discretion in denying the motions for severance.

Whether a joint trial of codefendants for their respective conduct in relation to a single incident is unduly prejudicial to each defendant is a matter within the discretion of the trial judge. *State v. Nutley* (1964), 24 Wis. 2d 527, 129 N. W. 2d 155, certiorari denied, 380 U. S. 918, 85 Sup. Ct. 912, 13 L. Ed. 2d 803; *Mandella v. State* (1947), 251 Wis. 502, 29 N. W. 2d 723.

A defendant may attain a severance if a joint trial would be prejudicial to his individual interest. In *State v. Nutley, supra,* at 543, this court discussed what constitutes prejudice in this context:

" 'Prejudice' in this sense, means that an entire line of evidence relevant to the liability of only one defendant may be treated as evidence against all defendants by the trier of fact simply because they are tried jointly. Again, if the defendants assert antagonistic defenses, they will often face the double burden of meeting the attack of both the prosecution and their codefendants. Therefore, we have held that if codefendants assert antagonistic defenses, they are entitled to separate trials."

Appellant Zwicker was tried with a codefendant who was arrested on the same charge arising out of the first demonstration. Appellant Zwicker's only assertion is that the impropriety of the conduct of the codefendant during the trial prejudiced the jury against him and thus was grounds for a severance.

The trial court correctly concluded that the demeanor of the codefendant did not constitute grounds for severance.

As to the other defendants involved in the second demonstration, it is claimed that separate trials should have been granted because the evidence introduced against one could have been prejudicial to the others.

Upon examining the record, we see no basis for such an assertion. All of the activities which culminated in their arrest took place on the same day, in the same building and during the same demonstration. None of the defenses presented was in any way antagonistic.

Also, in its instruction to the jury the court specifically instructed the jury to judge each defendant on "his own actions and conduct," and told the jury that the consolidation of the cases for trial was not to be interpreted to mean that one defendant could be held responsible for the acts of another.

Both the trial judge and the jury were thoroughly cognizant of the situation. The trial judge did grant a severance as to one defendant, and the jury did, in fact, acquit another defendant in the case arising out of the October demonstration.

The denial of the motions for severance in both cases was not an abuse of discretion or prejudicial error on the part of the trial court.

### (6) *Credible evidence.*

Appellants also contend that there is not sufficient evidence to support the verdicts of guilty. "On an appeal in a criminal case the test of the sufficiency of the evidence for a conviction is 'whether the evidence adduced, believed and rationally considered by the jury, was sufficient to prove the defendant's guilt beyond a reasonable doubt.'" *State v. Stevens* (1965), 26 Wis. 2d 451,

463, 132 N. W. 2d 502; *State v. Johnson* (1960), 11 Wis. 2d 130, 137, 104 N. W. 2d 379.

The conduct of the defendants, as revealed by the evidence presented to the jury, has been hereinbefore briefly set forth. We have reviewed the rather lengthy records in these cases and considerably more could be written about the conduct of the respective defendants in these incidents. To do so would serve no useful purpose. The appellants' brief sets forth an attempt to rationalize and minimize the conduct of the defendants. They make no assertion that the evidence was inherently incredible.

The evidence adduced, believed and rationally considered by the jury was sufficient to prove the guilt of each defendant beyond a reasonable doubt.

*By the Court.*—Judgments affirmed.

WILKIE, J. (*concurring in part; dissenting in part*). My disagreement with the majority is limited to the conviction of the defendant, Robert K. Zwicker.

I concur with the majority in its interpretation of *Givens,*[1] bearing on the nature of the term "disorderly conduct." As thus interpreted, I would find error in the pertinent model instruction used by both trial courts in the two cases. To be considered disorderly, the conduct, whether by word or act or both, must satisfy both of two elements. (1) It must be one of the six types of conduct specifically proscribed by the statute, *i.e.,* "violent, abusive, indecent, profane, boisterous, [or] unreasonably loud," or it must be of a type of conduct similar thereto; and (2) the conduct must be carried out "under circumstances in which such conduct tends to cause or provoke a disturbance." The error in the disputed instructions comes in the trial courts' failure to require the presence of both elements.

---

[1] *State v. Givens* (1965), 28 Wis. 2d 109, 135 N. W. 2d 780.

The erroneous jury instruction in Zwicker provided, in part,

". . . Conduct is disorderly, although it may not be boisterous or unreasonably loud, if it is of a type which tends to disrupt good order and provoke a disturbance."

Thus, any and all conduct—be it peaceful, constitutionally protected, passive, quiet, nonabusive, nonviolent—which tends to create or provoke a disturbance could be subject to prosecution under this instruction. It is clear that the jury instruction does not comply with the first element of disorderly conduct as set forth in *State v. Givens*, and should have been struck down.

In the case of the defendants Weiland, Oberdorfer, Simons and Sirotof, the instruction was not identical but stated that disorderly conduct "need not be boisterous or loud if it tends to disrupt good order or to provoke a disturbance." This instruction was erroneous for the same reason as was that in Zwicker, but this error was not prejudicial in the case of these four defendants because it is beyond dispute that their respective acts of disorderly conduct came well within one or more of the six proscribed types identified by the statute, or were acts similar thereto. As to Zwicker, however, he was convicted for performing acts which could not constitutionally come within the first element of disorderly conduct. As distinguished from the other defendants in the later incident, he did not use profanity, spit, block doors, or strike out at the officers. In the February demonstration Zwicker's misconduct (as recited by the majority) consisted of holding a sign over his head in violation of a rule made by the university, going limp when the officers were attempting to remove him from the administration building, and being heard to say "Are we going to let the university administration tell us how to run a protest?" None of these acts was "violent, abusive, indecent, profane, boisterous [or] unreasonably loud." Neither could

the conduct be described as otherwise "similar thereto." [2] He was not charged with violating a university rule. There are procedures available for the discipline of university students found to have violated valid university rules. If the disorderly conduct statute is to withstand the constitutional attack made on it as being overbroad, the proscribed conduct must be either "violent, abusive, indecent, profane, boisterous, [or] unreasonably loud" or conduct "similar thereto." Zwicker's conduct was not of this type. It was constitutionally protected. Therefore, his conviction should have fallen.

I am disturbed over the consequences of the majority opinion.

The majority saves the disorderly conduct statute from the attacks on its constitutionality by correctly accepting the interpretation of the *Givens Case* which defines "otherwise disorderly conduct" as conduct which is similar to the forms of conduct specifically proscribed in the statute. But at the same time, the majority sustains a jury instruction which provides, in effect, that conduct is disorderly even though it may not be of the specifically proscribed types if the conduct tends to disrupt.

Although the majority states that "not every participant in an otherwise peaceful demonstration is subject to conviction; only those whose conduct embraces *both* elements of the disorderly conduct statute," nevertheless, by refusing to find error in the fatal jury instruction and by affirming Zwicker's conviction, the majority, as I view it, in effect has removed the first element from the statute and has required only proof of the second for a conviction of disorderly conduct.

As thus construed, I would find the statute both vague and overbroad; vague in that the element of notice has been removed by the aforementioned jury instructions; overbroad in that it would permit prosecution for activi-

---

[2] *State v. Givens, supra,* at page 115.

ties which are protected under the Wisconsin and United States Constitutions. In affirming the conviction of Zwicker, the majority brands every participant in every demonstration or protest, however peaceful and orderly, guilty of disorderly conduct even though his conduct is not violent, not abusive, not indecent, not profane, not unreasonably loud, nor conduct similar thereto, but because a disturbance by others might nevertheless follow.

Adopting the theory which I believe to be proper, I would distinguish between the defendants, reversing as to Zwicker and affirming as to the other four.

I am authorized to state that Mr. Justice HEFFERNAN joins in this opinion.

* Motion for rehearing denied, with costs, on April 1, 1969.